968 F.2d 21
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lester Leroy MILES, Defendant-Appellant.
 No. 91-8043.
 United States Court of Appeals, Tenth Circuit.
 June 19, 1992.
 
 Before SEYMOUR, STEPHEN H. ANDERSON and BALDOCK, Circuit Judges.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Defendant Lester Leroy Miles appeals from a jury verdict convicting him of one count of distribution of methamphetamine, in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(c), resulting in the imposition of a sentence of 37 months imprisonment, three years supervised release, and a $50.00 fine. We affirm.
 
 BACKGROUND
 
 3
 This case arose out of a sale of methamphetamine by defendant Miles to his now ex-wife, Valerie, known now as Valerie Michaulke, in Gillette, Wyoming in August, 1990. Miles and Ms. Michaulke were married from September, 1988 until November, 1990. From February, 1990 until their divorce was finalized in November, 1990, Miles and Ms. Michaulke were separated. There was testimony that during their marriage, both Miles and Ms. Michaulke bought, used, and distributed methamphetamine on various occasions. R. Vol. II at 5-6. Ms. Michaulke admitted regular use during the marriage. Miles testified that he used it "a couple of times." R.Vol. V at 378.
 
 
 4
 Ms. Michaulke testified that during their separation, Miles had verbally agreed to pay for her use of her credit cards. She also testified that, during the separation, she and Miles met occasionally in Gillette, Wyoming and that on one occasion he showed her what she believed was a packet of methamphetamine and asked her if she wanted some, showed her a piece of paper he said was a recipe for making methamphetamine, and told her he wanted to start manufacturing his own methamphetamine.
 
 
 5
 In July, 1990, Ms. Michaulke wrote three $50.00 checks against insufficient funds, which resulted in an investigation by the Gillette, Wyoming Police Department. There was testimony that Ms. Michaulke apparently stated that she believed the checks were Miles' responsibility and suggested that, in exchange for avoiding any criminal prosecution for the bad checks, she would arrange a methamphetamine transaction with Miles, whom she described as a "big crank dealer." She therefore agreed with the Gillette police that she would arrange such a transaction in exchange for having the police pay the $150.00 owed on the checks.
 
 
 6
 After a series of recorded phone calls, Miles and Ms. Michaulke agreed to meet in Gillette, where Miles would sell Ms. Michaulke two ounces of methamphetamine for $5,000. This was accomplished in two meetings on August 4, 1990. Gillette police officers conducted surveillance of the meetings, including recording the parties' conversations by means of a body recorder and wireless transmitter on Ms. Michaulke's body.
 
 
 7
 Miles and a companion were thereafter arrested as they drove away from the scene of the drug transaction. Miles' car was seized and impounded. A firearm was found on the back seat of Miles' car.
 
 
 8
 Miles was advised of his Miranda rights, after which he agreed to talk to Department of Criminal Investigation ("DCI") agents. He did so in two separate conversations. Prior to each interview, he was advised of his Miranda rights and agreed to talk. He answered certain questions relating to the drug buy, but he refused to answer certain other questions, including questions about his source for the drug and how he got involved in drug use. Miles was then charged with one count of distribution of methamphetamine, and one count of possession of a firearm during a drug trafficking offense. After trial to a jury, he was acquitted of the possession of a firearm charge and convicted of the methamphetamine distribution charge. This appeal followed.
 
 DISCUSSION
 
 9
 Miles alleges three errors necessitate a reversal of his conviction and a new trial: (1) the district court erred in refusing to admit into evidence Miles' and Ms. Michaulke's divorce decree to permit the defense to impeach Ms. Michaulke's credibility; (2) the government committed reversible error by violating the district court's ruling in limine that the government could not comment on Miles' refusal to answer certain questions posed to him while he was in jail following his arrest and after he was advised of his Miranda rights; and (3) the district court erred in admitting certain testimony by two law enforcement officers. We reject these arguments.
 
 I.
 
 10
 We first address Miles' argument concerning the refusal to admit into evidence Miles' and Ms. Michaulke's divorce decree. A trial court's evidentiary rulings are reviewed for an abuse of discretion. United States v. Lonedog, 929 F.2d 568, 570 (10th Cir.), cert. denied, 112 S.Ct. 164 (1991); United States v. Pinelli, 890 F.2d 1461, 1474 (10th Cir.1989), cert. denied, 495 U.S. 960 (1990). The defense sought to use the divorce decree to impeach Ms. Michaulke, who had repeatedly testified that at the time of the drug transaction, Miles was responsible for paying her debts and that he had refused to do so. The divorce decree, signed some four months after the drug transaction, contained no such stipulation. Miles argues the decree is relevant as to that particular point, as well as to show Ms. Michaulke's "general bias ... as both a government informant and as a witness, due to her turbulent personal relationship with the defendant." Defendant/Appellant's Opening Brief at 10.
 
 
 11
 The government objected to the admission of the decree, arguing it was irrelevant because it was signed approximately four months after the drug transaction in question. The district court sustained the objection. We hold that, in doing so, the district court did not abuse its discretion. We agree that the divorce decree was simply irrelevant to issues surrounding the drug buy for which Miles was convicted. Moreover, ample evidence was introduced concerning the allegedly turbulent relationship between Miles and Ms. Michaulke. The divorce decree would have added nothing additional.
 
 II.
 
 12
 Miles next argues there was reversible error surrounding an allegation that the government impermissibly commented on his right to remain silent. After his arrest, and while in jail, Miles was given his Miranda rights. He thereafter gave two statements to DCI agents Eric and Roy Seaman. He told agent Seaman where the $5000 from the drug buy would be found. He refused to answer certain questions, such as how he became involved in the sale of methamphetamine and how he paid for the methamphetamine he sold to Ms. Michaulke. He said he didn't know who the source was for the drug.[1] In his second statement, he declined to say where he purchased the drug.
 
 
 13
 The defense made a motion in limine to prohibit the government from cross-examining Miles on these matters. The court ruled that the agents who interviewed Miles would only be allowed to testify with respect to what Miles talked about, but could not testify concerning questions Miles refused to answer. The court also stated that if Miles testified in his own defense, the government could be "free to make a searching inquiry." R.Vol. IV at 127. The government then agreed to "leav[e] out the things that [Miles] refused to answer." Id. at 129.
 
 
 14
 The government thereafter called agent Seaman to testify, out of the presence of the jury, about his interview with Miles so that the court could determine about which statements Seaman could testify to the jury. The court again ruled that Seaman could testify concerning Miles' affirmative statements, but not about questions Miles refused to answer. Seaman thereafter testified before the jury, without objection, concerning his interview with Miles.
 
 
 15
 The defense called Miles to testify. During cross-examination, Miles testified that the first name of his drug source was "Jerry." R.Vol. V at 396. A little later the prosecutor asked "Isn't it true, sir, that [during your interview] you refused to tell them who your source was?" Id. at 410. Defense counsel objected, and the district court sustained the objection. Defense counsel did not ask for a cautionary instruction or seek a mistrial. No further reference was made to the matters about which Miles had refused to talk to agents.
 
 
 16
 Miles argues the district court correctly ruled that the government could not explore areas where Miles had refused to speak to agents, and that the government agreed to that limitation. Thus, he argues the prosecutor's inquiry into Miles' source for the methamphetamine, indisputably an area covered by the motion in limine, violated the court's ruling, the government's own agreement, and amounted to an impermissible comment on Miles' Fifth Amendment right to remain silent.
 
 
 17
 The government responds by arguing that the district court's ruling was incorrect, that once Miles had testified, he could be cross-examined about any prior inconsistent statements he had made to the agents, and that, even assuming the prosecutor's question was a comment on Miles' right to remain silent, any error was harmless beyond a reasonable doubt.
 
 
 18
 "The general rule of law is that once a defendant invokes his right to remain silent, it is impermissible for the prosecution to refer to any Fifth Amendment rights which defendant exercised." United States v. Burson, 952 F.2d 1196, 1201 (10th Cir.1991), cert. denied, 60 USLW 3717 (1992) (citing Griffin v. California, 380 U.S. 609, 615 (1965)). We need not address whether the district court's ruling was correct, because, even assuming it was correct and the prosecutor's question did amount to an erroneous comment on Miles' right to remain silent, any error arising therefrom was clearly harmless beyond a reasonable doubt. See United States v. Harrold, 796 F.2d 1275, 1281 n. 6 (10th Cir.1986), cert. denied, 479 U.S. 1037 (1987). As we noted in Burson:
 
 
 19
 Chapman dictates the beneficiary of a constitutional error must prove beyond a reasonable doubt the error complained of did not contribute to the guilty verdict. In United States v. Massey, 687 F.2d 1348 (10th Cir.1982), we set forth five factors as relevant inquiries to be used in determining whether comment concerning the defendant's silence is harmless. These factors include:
 
 
 20
 "1. The use to which the prosecution puts the ... silence.
 
 
 21
 "2. Who elected to pursue the line of questioning.
 
 
 22
 "3. The quantum of other evidence indicative of guilt.
 
 
 23
 "4. The intensity and frequency of the reference.
 
 
 24
 "5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions."
 
 
 25
 Id. at 1353 (quoting Williams v. Zahradnick, 632 F.2d 353, 361-62 (4th Cir.1980)).
 
 
 26
 952 F.2d at 1196. Considering those factors, we hold that any impropriety in the prosecutor's question was harmless beyond a reasonable doubt. There was overwhelming evidence of Miles' guilt, and little to support his entrapment defense. There was no other comment on Miles' invocation of his right to remain silent, and no further mention of the prosecutor's allegedly improper question. We are satisfied that any error was harmless beyond a reasonable doubt. Id.; Harrold, 796 F.2d at 1280-81; see also United States v. McKinnel, 888 F.2d 669, 678 (10th Cir.1989).
 
 III.
 
 27
 Finally, Miles argues that the testimony of two witnesses was improperly admitted. We review for an abuse of discretion. United States v. Pinelli, 890 F.2d 1461, 1474 (10th Cir.1989), cert. denied, 495 U.S. 960 (1990); United States v. Hoffner, 777 F.2d 1423, 1425 (10th Cir.1985). We find no such abuse.
 
 
 28
 The disputed testimony came from two law enforcement officers: DCI Agent Kevin Hughes, who testified as to the reasons why informants such as Ms. Michaulke are used in drug investigations, the characteristics of drug dealers in the Wyoming area, and his own experience in drug investigations; and DCI Agent Eric Seaman, who also testified as to certain characteristics he had observed about drug dealers in the Gillette, Wyoming area. Defense counsel objected to the testimony of both officers, and the district court overruled the objections.
 
 
 29
 The trial court is afforded wide discretion in determining the admissibility of evidence. We agree with the government and the district court that the testimony of agents Hughes and Seaman was relevant and properly admitted under Fed.R.Evid. 701. See United States v. Stanley, 896 F.2d 450, 451-52 (10th Cir.1990).
 
 CONCLUSION
 
 30
 For the foregoing reasons, we AFFIRM defendant Miles' conviction.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Agent Seaman and Miles himself both testified that Miles had said he was sleeping in his car and somebody threw the methamphetamine on to his chest. R.Vol. IV at 135, 132; R.Vol. V at 396