**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James L. HARROLD, Sr.,
Defendant-Appellant.**

No. 84–2612.

United States Court of Appeals,
Tenth Circuit.

July 14, 1986.

John E. Dowdell of Norman, Wohlgemuth & Thompson, Tulsa, Okl., for defendant-appellant.

John S. Morgan, Asst. U.S. Atty. (Layn R. Phillips, U.S. Atty., with him on brief), Tulsa, Okl., for plaintiff-appellee.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Defendant, James L. Harrold, Sr., appeals his conviction for income tax evasion, in violation of 26 U.S.C. § 7201.

On appeal defendant claims that: (1) his indictment was insufficient; (2) the government and its witnesses improperly referred at trial to his assertion during pretrial investigations of his Fifth Amendment right to silence; (3) the court inadequately instructed the jury on his good-faith defense; (4) the court wrongly excluded evidence relevant to his good-faith defense; and (5) he was denied his right under 28 U.S.C. § 1867(f) to inspect the jury records. We reject all these claims except the last. On that issue we remand on a limited basis.

Defendant was indicted for income tax evasion for the years 1979 through 1981. During this time, defendant worked as an engineer for Consultants and Designers, Inc. His earnings from this company were as follows: 1979—$31,762.37; 1980—$35,208.42; 1981—$36,687.91. After filing his 1975 return, defendant decided to stop paying income taxes because, he contends, he had determined from his own research that wages did not constitute taxable income.

Defendant consequently filed W–4 withholding forms declaring himself exempt from income taxes and paid no income taxes during any of the years at issue.

Defendant created the Zident Educational Trust (Zident) on February 6, 1980. The alleged purpose of this trust was to create an "educational facility that could pass on Christian beliefs and patriotic themes." R.X., 679. The evidence suggested, however, that defendant placed most of his personal property in the trust and used it as a vehicle for his personal investments. Although defendant was not a trustee of Zident, he was its executive secretary, exercised substantial control over its investments, and had signatory power for the trust.

Extensive evidence was presented concerning the Zibiz Research Trust (Zibiz), which was created by the Zident trustees and whose beneficiary was Zident. Defendant was manager of Zibiz and in that capacity offered advice on investments. He also had signatory power for Zibiz. There was evidence that Zibiz purchased items such as a waterbed and a motorboat and occasionally "traded" them to Zident. Defendant lived in a trailer that Zibiz owned.

Both of these trusts had assets worth several thousand dollars and were active in the stock market. They paid a negligible amount of income taxes in 1980 and 1981. Zibiz, for example, paid $1449.08 in taxes in 1981. Zident paid no taxes in 1980 and 1981. An expert government witness testi-fied that all of the income of these trusts should be attributed to defendant because of the control he exercised over them. That expert concluded the trusts had been used to conceal defendant's income.

I

Defendant asserts that his indictment was insufficient. He argues that "there are no factual allegations as to the amount of taxable income received or tax liability due" and that it is not "clear what the alleged evasion may be." Brief of Appellant at 15.

In *United States v. Radetsky*, 535 F.2d 556 (10th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976), we set out the requirements of an indictment:

"First, the indictment must contain the elements of the offense and sufficiently apprise the defendant of what he must be prepared to meet; second, it must be such as to show to what extent he may plead a former acquittal or conviction as a bar to further prosecution for the same cause."

*Id.* at 562; *see also United States v. Salazar*, 720 F.2d 1482, 1486 (10th Cir.1983), *cert. denied*, —— U.S. —— 105 S.Ct. 789, 83 L.Ed.2d 783 (1985); *Rose v. United States*, 128 F.2d 622, 624 (10th Cir.1942).

■ The indictment here meets those requirements.[1] The focus of the government's case was on defendant's filing of fraudulent W–4 withholding forms and his creation of fraudulent trusts to hide his

---

1. The indictment stated as follows:

"During the calendar year 1979, defendant JAMES L. HARROLD, SR., a resident of Tulsa County within the Northern District of Oklahoma, had and received taxable income upon which there was a substantial tax liability due and owing; that said defendant was required by law following the close of the taxable year 1979 and on or before April 15, 1980, to file with the Internal Revenue Service a federal income tax return reporting such income; that said defendant willfully and knowingly attempted to evade and defeat the income tax due and owing to the United States of America by failing to make and file an income tax return as required, by failing to pay the Internal Revenue Service the income tax due and owing for the calendar year 1979, and by concealing and attempting to conceal from all proper officers of the United States of America his true and correct taxable income by conducting his affairs so as to avoid the maintenance of normal business records, by attempting to conceal his ownership of assets, by conducting financial transactions through the use of cash, cashier's checks or money orders, the likely effect of which would be to mislead or conceal, and by providing his employer with a fraudulent W–4 tax withholding form, in violation of Title 26, United States Code, Section 7201."

R. I, 24. This language was repeated for the charges relating to 1980 and 1981.

income and assets. The indictment specifically referred to the W–4 forms and to attempts to "conceal" ownership of assets. Although it would have been better for the indictment to have referred to the challenged trusts with greater specificity, if the government had detailed knowledge then of the precise methods defendant used to conceal his income, the reference to the concealment of asset ownership gave defendant notice that the trusts were likely to be questioned at trial. *See Salazar,* 720 F.2d at 1487 ("sufficiency of an indictment, however, 'is not a question of whether it could have been more definite and certain' ") (quoting *United States v. Debrow,* 346 U.S. 374, 378, 74 S.Ct. 113, 115, 98 L.Ed. 92 (1953)).

■ In addition, inadequacy of an indictment requires reversal only if it prejudiced the defendant. *See United States v. Fitzgibbon,* 576 F.2d 279, 283 (10th Cir.), *cert. denied,* 439 U.S. 910, 99 S.Ct. 279, 58 L.Ed.2d 256 (1978). Here defendant presented detailed evidence concerning the challenged trusts and seemed prepared to meet the government's case. Accordingly, there was no prejudice to him from any lack of specificity in the indictment.

■ Defendant's claim that the indictment should have included the amount of taxes owed is meritless. In a § 7201 prosecution the government is not obligated to prove the precise amount owed. *See Graves v. United States,* 191 F.2d 579, 582 (10th Cir.1951); *United States v. Newman,* 468 F.2d 791, 795 (5th Cir.1972); *United States v. Stein,* 437 F.2d 775, 779 (7th Cir.1971). Thus there is no requirement

that an indictment under § 7201 specify the exact amount owed.

■ Defendant claims that the indictment is too vague to protect him from subsequent prosecutions for the same offenses. But in *Radetsky* we noted that "the record evidence of exhibits and testimony" is available to protect against a defendant being placed twice in jeopardy. *Radetsky,* 535 F.2d at 563; *see also United States v. Smith,* 692 F.2d 693, 696–97 (10th Cir.1982). The trial record clearly indicates that this prosecution involved violations concerning the Zident and Zibiz trusts from 1979 through 1981. There is little danger that defendant will be prosecuted again for the same trust violations.

## II

Defendant next claims that the government violated his due process rights by intentionally eliciting testimony from two IRS officers that defendant refused to answer certain questions during pre-indictment investigations in reliance on his Fifth Amendment privilege against self-incrimination.

First, IRS Officer Robert Randolph testified that defendant invoked his right to remain silent at a meeting with IRS officers on November 13, 1979. The second incident arose during the testimony of IRS Officer Larry Garner. Garner, who was conducting a criminal investigation of defendant, testified that defendant refused to reply to certain questions after receiving a *Miranda* warning.[2]

2. The following testimony of Garner is challenged:
"Q. [Government] All right. What, if anything, did you talk to Mr. Harrold about?
A. [Garner] Whether or not he had filed an income tax return for the years 1979, 1980 and 1981.
Q. All right. Did you advise him of anything?
A. Prior to actually getting into discussions, I did advise him of his Fifth Amendment rights as required by our procedures.
Q. And would you tell us exactly what it was you advised him of?

A. His Constitutional rights, Fifth Amendment Constitutional rights.
Q. What were those? Can you read them to us, please?
. . . .
Q. What did Mr. Harrold respond, if anything?
A. That he did understand the rights.
Q. What happened next? Did you talk about anything? Did you visit with him?
A. Yes, we did, I did, pardon me.
Q. Go ahead.
A. I asked him questions pertaining to the fact that he had actually filed a 1979 or 1980 or 1981 income tax return, and he responded

The government states in its brief that it regrets this questioning of both IRS officers with respect to defendant's silence but asserts that "such error was harmless." Brief of Appellee at 14. We are surprised that the government in effect concedes that reference to defendant's silence by Officer Randolph was error. Officer Randolph was conducting a civil investigation and there is no indication in the record that he gave defendant a *Miranda* warning. In *United States v. Massey*, 687 F.2d 1348 (10th Cir.1982), we stated that a comment on a defendant's silence is error only when the defendant remained silent in reliance on government action, *i.e.*, a *Miranda* warning. *Id.* at 1353; *see also Wainwright v. Greenfield*, — U.S. —, 106 S.Ct. 634, 637, 88 L.Ed.2d 623 (1986); *Fletcher v. Weir*, 455 U.S. 603, 605–07, 102 S.Ct. 1309, 1311–12, 71 L.Ed.2d 490 (1982); *Jenkins v. Anderson*, 447 U.S. 231, 240, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86 (1980); *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 46 L.Ed.2d 91 (1976); *United States v. Davis*, 780 F.2d 838, 844–45 (10th Cir.1985). Because defendant's refusal to respond to certain of Randolph's questions was not based on a *Miranda* warning or any other government action, the testimony concerning defendant's pre-*Miranda* reliance on the Fifth Amendment was proper and will not be considered in determining if defendant was prejudiced.[3]

that you had to have approximately thirty-three hundred dollars with which to file the tax return, and that if he made that amount of money that he would have more than likely filed a tax return.

Q. All right. Did he say anything else?

A. Okay, he indicated that if he had filed the tax returns for those years, it would have been with the Austin Service Center in Austin, Texas.

. . . .

Q. All right. Can you tell us everything that Mr. Harrold told you on this particular occasion?

. . . .

A. Okay. Essentially, when we got into the discussion about whether he had filed a return or not, and also when I had asked him if he had any income, he indicated that he would have filed a return, like I said before, if he had had at least thirty-three hundred dollars in income. I asked him if he had any income, and his response was that he had some dividends and he had earned some moneys [sic] primarily from odd types of jobs that he had actually worked. He—okay, he indicated that his stocks that he actually had—he did own some stocks. He had bought stock by the name of President Steyn. He had bought it through Merrill Lynch brokerage firm, and he had earned, as I mentioned, some dividends from that. Other than principally the fact that he had dividends, there was no income per se. We got into the discussion about how was he existing at this particular point in time, and during that time he indicated that he was doing primarily odd jobs and did repair work as needed, and, of course, as requested by various individuals. I asked him if this location was his, and he indicated that he was more or less a caretaker for the area where I found him, which was the Route 2, Box 134–A area, and also encompassing the mobile home. He was being allowed to stay there by friends, and he was caretaking the property for those friends. Let's see, okay, we got into repeating for the most part some questions, and primarily what I'm speaking of is the employment aspect of it, who was he actually employed by, to which, as I mentioned earlier, he never actually really gave me the answers to those questions. He just avoided it. And to some degree he would plead the Fifth Amendment as though he would not respond to the question.

. . . .

Q. Did he, at any time, ever assert the Fifth Amendment in response to any questions you asked him?

A. He did assert the Fifth Amendment to various questions I asked him after I had read him his rights.

Q. Do you recall how many times?

MR. DOWDELL: I object, Your Honor.

THE COURT: Sustained.

MR. MORGAN: I believe that is all."

R. IV, 77–81, 88.

3. Defendant, in his later conversation with Officer Garner, answered some questions and refused to answer others. We believe that this partial silence does not preclude him from arguing that a violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 46 L.Ed.2d 91 (1976), occurred. To the extent that a defendant clearly relies on a *Miranda* warning to refuse to answer specific questions, he has been induced by the government to do so and his silence may not be used against him. *See Hockenbury v. Sowders*, 718 F.2d 155, 159 (6th Cir.1983), *cert. denied*, 466 U.S. 975, 104 S.Ct. 2354, 80 L.Ed.2d 826 (1984); Note, *Protecting* Doyle *Rights After* Anderson v. Charles: *The Problem of Partial Silence*, 69 Va.L.Rev. 155, 166–67 (1983).

*Phelps v. Duckworth*, 772 F.2d 1410 (7th Cir.) (en banc), *cert. denied*, — U.S. —, 106 S.Ct. 541, 88 L.Ed.2d 471 (1985), can be read to indicate that *Doyle* only applies if a defendant

■ We agree that the government's questioning of Officer Garner about defendant's invocation of the Fifth Amendment was error. Nevertheless, if we find beyond a reasonable doubt that defendant was not prejudiced by the error, his conviction will stand.[4] *See United States v. Schmitt,* 794 F.2d 555 at 557 (10th Cir. 1986); *Massey,* 687 F.2d at 1353. In *Massey* we considered the following factors relevant in determining whether an error was harmless:

"1. The use to which the prosecution puts the post-arrest silence.

2. Who elected to pursue the line of questioning.

3. The quantum of other evidence indicative of guilt.

4. The intensity and frequency of the reference.

5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions."

*Id.* (quoting *Williams v. Zahradnick,* 632 F.2d 353, 361–62 (4th Cir.1980)); *see also Schmitt,* at 559; *United States v. Remigio,* 767 F.2d 730, 735 (10th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 535, 88 L.Ed.2d 465 (1985).

■ In determining whether defendant was prejudiced, the key factors often will be the purpose for which the government used defendant's silence and the quantum of other evidence of defendant's guilt. The government admits here that the purpose of its questioning was "to establish defendant's knowledge of his obligation to file a tax return." Brief of Appellee at 12. This was a clear violation of *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), which forbade the government from drawing meaning from a defendant's silence. *Id.* at 409, 100 S.Ct. at 2182. The error is particularly serious here because defendant's knowledge of his tax liability was the central issue in this case; his defense was that he did not know he owed taxes. In addition, the government used defendant's silence to impeach his testimony that he was unaware that he had violated the tax laws.[5]

■ Although the error in this case was egregious, it still can be deemed harmless if the defendant's theory was "transparently frivolous" and the evidence of guilt was overwhelming. *See United States v. Meneses-Davila,* 580 F.2d 888, 894 (5th Cir. 1978); *Chapman v. United States,* 547 F.2d 1240, 1248 (5th Cir.), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977). In light of the quantum and nature of other evidence at trial indicative of defendant's knowledge of his tax obligations,

---

remains almost completely silent following a *Miranda* warning. *Id.* at 1413. In *Phelps,* however, the defendant never asserted his *Miranda* rights at all; instead, he offered an exculpatory story at the time of arrest. *Id.* at 1412. In contrast, defendant here specifically invoked his *Miranda* rights as to particular questions. Therefore, he relied on governmental action and is entitled to the protections of *Doyle. See id.* at 1422 (Posner, J., concurring) (basis of *Doyle* is that defendants should not be "bushwacked" if they rely on right to silence). Furthermore, the Seventh Circuit relied on *Hockenbury* for its conclusion that *Doyle* only applies in cases of near complete silence. *Id.* at 1413. In *Hockenbury,* however, the Sixth Circuit specifically stated that *Doyle* protects a defendant "who has refused to answer specific questions after *Miranda* warnings have been given, ...." *Hockenbury,* 718 F.2d at 159. Therefore, we do not read *Phelps* as inconsistent with the rule we are applying here.

4. Defendant did not object to references to his silence until the government asked how many times defendant invoked the Fifth Amendment. Although defendant erred in not objecting at the prosecution's initial reference to his silence, reference to a defendant's silence following a *Miranda* warning is "plain error" implicating substantial rights and thus is still subject to review. *See* Fed.R.Crim.P. 52(b); *United States v. Barton,* 731 F.2d 669, 675 (10th Cir.1984) (citing cases).

5. This case is distinguishable from *Charles,* where the Supreme Court permitted the prosecution to use defendant's post-*Miranda* statements to impeach the defendant's statements at trial. *Charles,* 447 U.S. at 408, 100 S.Ct. at 2182. Here, by its own admission, the government used defendant's *silence* to impeach him, not his statements made following the *Miranda* warning. Thus we are not engaging in the "formalistic" understanding of silence that the Court condemned in *Charles. See id.* at 409, 100 S.Ct. at 2182.

we are convinced that the jury would have found defendant's good-faith defense frivolous even without the government's impermissible questions.

The government demonstrated that defendant was involved in the tax protester movement. An undercover special agent for the IRS testified that in 1979, at the National Tax Freedom forum in Oklahoma City (a tax protester convention), defendant stated to him that he did not file tax returns in 1976 or 1977 as a way of protesting the income tax. The agent also testified that defendant stated he would play "dumb" if the IRS contacted him, that he would send out certified letters to the IRS concerning his tax questions, and that he believed that these letters could then be used as evidence of his "good faith." The IRS agent further testified that defendant stated he would use these letters to establish his ignorance of the tax laws. At trial, defendant acknowledged that such methods were discussed expressly at the National Tax Freedom forum. The evidence at trial showed that this plan was precisely the course defendant later adopted and now submits to us. From this evidence a reasonable jury could only have concluded that defendant was well aware of his tax obligations, and that he chose to mask such knowledge through a careful scheme.

Moreover, defendant testified he filed income tax returns from 1948 to 1975. By 1976, however, he stated he had come "to the conclusion that the wages [he] was receiving were not taxable income as defined by the Supreme Court, . . . ." R.X, 641. Defendant then ceased paying income tax. From this testimony we believe the jury had before it overwhelming evidence that defendant had full knowledge of his tax liability, but determined, for reasons known only to him, to drop out of the system. It would have been absurd for the jury to find that, although defendant had paid income tax on his wages for twenty-seven years, he suddenly no longer "knew"

that this was his obligation. *Cf. United States v. Weninger,* 624 F.2d 163, 167–68 (10th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). The evidence demonstrated only that defendant *disagreed* with the law, not that he was *unaware* of it. *See infra* at 1282–83 (discussing state of mind necessary for criminal tax evasion). Thus, in light of the evidence at trial, defendant's good-faith defense was indeed transparent.

Further, the prosecution did not highlight the evidence of defendant's taking the Fifth Amendment. It did not ask him, when he took the stand, why he refused to answer particular questions. And it did not refer to this issue in closing argument. Although we recognize that curative instructions do not always cure, we note also that the trial court did instruct the jury at the close of evidence that defendant had the right to decline to answer questions and no adverse inference could be drawn from his exercise of his constitutional right. Finally, these were only isolated remarks during a two-week trial, which mitigates the danger of prejudice. *See Remigio,* 767 F.2d at 735 (curative instruction, isolated reference, and overwhelming evidence of guilt result in harmless error despite intentional reference to defendant's silence); *Velarde v. Shulsen,* 757 F.2d 1093, 1096 (10th Cir.1985) (chance of prejudice greater when comment on silence occurs in one-day trial, with no curative instruction); *United States v. De La Luz Gallegos,* 738 F.2d 378, 383 (10th Cir.1984) (comment on silence harmless when made only in opening argument, evidence substantial, and comment not fresh in jurors' minds); *United States v. Bridwell,* 583 F.2d 1135, 1139 (10th Cir.1978) (isolated remark, immediate curative instruction, and overwhelming evidence render comment harmless).

Accordingly, we find the government's reference to defendant's post-*Miranda* silence harmless.[6]

---

6. Because the government erred in commenting on defendant's silence, it has the burden of proving that the error was harmless. *See Chap-*

*man v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *see also Brooks v. Kemp,* 762 F.2d 1383, 1436–37 (11th Cir.1985)

## III

Defendant alleges that the district court erred in failing to instruct the jury specifically that, if he had a good-faith belief that he owed no income tax, he could not be found guilty of tax evasion.[7]

In *United States v. Phillips*, 775 F.2d 262 (10th Cir.1985), we held that a defendant in a tax evasion case was entitled to an instruction that a subjective good-faith misunderstanding of tax liability is a defense.[8] *Id.* at 264; *accord United States v. Wells*, 790 F.2d 73, 74–75 (10th Cir.1986). For example, if a defendant proved that he honestly believed that lottery winnings did not constitute taxable income, he would not be guilty of criminal tax evasion if he failed to declare his winnings. A defendant, however, is not entitled to an instruction that his good-faith *disagreement* with the tax laws constitutes a defense. *Id.; see also United States v. Weninger*, 624 F.2d at 167. Thus, if the winner of a lottery *knew* that his winnings consistently were held taxable by the IRS, but he did not declare them as income

---

(Clark, J., concurring in part, dissenting in part) (en banc). Yet the government in its brief does little more than recite that the evidence was "overwhelming" and note that a curative instruction was given. We deplore such practice on the part of the government. The doctrine of harmless error has not yet reached the point where the government can avoid the impact of its own miscues merely by intoning that "the evidence was overwhelming." Were this a closer case, the government's limited effort would result in reversal.

7. The district court instructed the jury as follows on the disobedience of known tax laws:
"Also, you're instructed that if you should find the defendant acted voluntarily, purposely, deliberately and intentionally in the handling or nonhandling of his income tax affairs for the year or years in question, as distinguished from accidental, [sic] inadvertently or negligently, then you're instructed it's no defense for the defendant that he claims a good purpose for doing so.
If it is shown that the defendant intentionally violated his known legal duty to file a return, his reasons for doing so are irrelevant. It's the duty of all citizens to obey the law, whether they agree with it or not."
R.Supp. III, 14. The court also instructed the jury that:
"to attempt to evade or defeat a tax involves two things. One, an intent to evade or defeat the tax, and secondly, some act by the defendant in the furtherance of such an attempt. The word attempt contemplates that the defendant had knowledge and understanding that during the particular tax years involved that he had income in such years which was taxable and which he was required by law to report, but that he nevertheless attempted to evade or defeat the taxes thereon, ..., by willfully failing to report income which he knew he had during that year and which he knew should have been reported."
*Id.* at 10–11. Finally, in explaining to the jury the inferences that it was permitted to draw from defendant's previous acts, the court stated

that the jury must find that "the accused acted willfully and with specific intent and not because of mistake, or accident or any other innocent reason." *Id.* at 13–14. It also instructed: "To establish specific intent, the government must prove that the defendant knowingly did an act which the law forbids or knowingly failed to do an act which the law requires, purposely intending to violate the law." *Id.* at 15.

8. Defendant's proposed instruction in the instant case was as follows:
"If a person, in good faith, believes that he has paid all the taxes he owes, he cannot be guilty of criminal intent to evade the tax. The *reasonableness* of his belief is for the jury to decide and this belief is based on whether he acted in good faith or whether he willfully intended to evade taxes. This issue of intent is one which the jury must determine from a consideration of all the evidence in the case bearing on the defendant's state of mind.
Such a good faith belief goes to the essential elements of willfullness, and a failure to understand the law or a misrepresentation of the law if honestly held would entitle the defendant to an acquittal of the charges made against him."
Brief of Appellant at 30 n. 14 (emphasis added).
Defendant's proposed instruction improperly stated the standard as objective. Under the proposed instruction, the jury would have had to decide whether defendant's belief was "reasonable." The proper standard is subjective. *See Phillips*, 775 F.2d at 264. Ordinarily, when a proposed instruction is a misstatement of the law, it need not be given. *See United States v. Stoddart*, 574 F.2d 1050, 1053 (10th Cir.1978). If, however, the instruction concerns a particularly important matter, the court should instruct the jury properly. *See United States v. Leach*, 427 F.2d 1107, 1112–13 (1st Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed.2d 59 (1970). Because this instruction concerned defendant's sole defense, we will consider whether it was error not to give the instruction in its proper form.

because he *believed* such winnings should not be taxable, he could be found guilty of criminal tax evasion. This distinction is crucial and has been recognized by several courts. *See, e.g., United States v. Mueller,* 778 F.2d 539, 541 (9th Cir.1985); *United States v. Aitken,* 755 F.2d 188, 191 (1st Cir.1985); *United States v. Burton,* 737 F.2d 439, 441–42 (5th Cir.1984); *United States v. Kraeger,* 711 F.2d 6, 7 (2d Cir. 1983).

In *United States v. Hopkins,* 744 F.2d 716 (10th Cir.1984) (en banc), we held that a good-faith instruction must be given in mail fraud cases as "a separate subject" if there is sufficient evidence to support the theory. *Id.* at 718. Instructions simply defining willfulness are in this circumstance insuffi-

cient. *Id.; accord United States v. Casperson,* 773 F.2d 216, 223 (8th Cir.1985). Instead "[t]here must be a full and clear submission of the good faith defense" to the jury. *Hopkins,* 744 F.2d at 718 (citations omitted).[9]

We do not see any significant difference between the good-faith defense tendered in *Hopkins* and that raised here. In each case the key question is whether defendant had a good-faith belief in the propriety of his conduct. *See id.* Thus defendant here was entitled to a good-faith instruction if there was evidence from which the jury could have found that defendant in good faith misunderstood the income tax laws.[10] *Cf. Mueller,* 778 F.2d at 541 (approving

---

**9.** The apparent reason courts have trouble giving an appropriate separate instruction on the good-faith defense is that the concept is so closely interwoven with "willfulness," on which the courts almost always will instruct. Because instructions should be tailored to the facts of the case, we are reluctant to suggest the form of any instruction. Nevertheless, because of the difficulties in these failure-to-file cases, we set forth here instructions similar to ones we have recently approved. These instructions are only models and should be modified to fit the facts of a specific case.

"*Willfulness* is an essential element of the crime of failing to file a return and the crime of supplying false or fraudulent information. You are instructed that an act is done 'willfully' if it is done voluntarily and intentionally with specific intent to do that which the law forbids or to not do that which it requires.

The word 'willfully' used in connection with the offense charged in this case means a voluntary, intentional violation of a known legal duty—that is, the defendant voluntarily and intentionally did not file an income tax return, which he was required by law to file and which he knew he was required to file.

The government need not prove that the defendant intended to defraud it or to evade the payment of any taxes to make the defendant's failure to file qualify as willful under this provision of the law.

Defendant's conduct is not 'willful' if he acted through negligence, inadvertence, mistake, or good-faith misunderstanding of the requirements of the law.

*Good faith.* Defendant asserts a defense of good-faith misunderstanding. You are instructed that if defendant had a good-faith misunderstanding of the law's requirements to report the income at issue here he is not guilty of the offense. It should be pointed

out, however, that neither defendant's disagreement with the law nor his own belief that the law is unconstitutional—no matter how earnestly held—constitutes a defense of good-faith misunderstanding or mistake. It is the duty of all citizens to obey the law regardless of whether they agree with it.

As an example, if the evidence shows that a defendant honestly believed that lottery winnings did not constitute taxable income, he would not be guilty of criminal tax evasion if he failed to declare his winnings. But if that individual knew his winnings consistently were held taxable, but he did not declare them as income because he believed they should not be taxable, he would be guilty."

**10.** In *United States v. Rothbart,* 723 F.2d 752 (10th Cir.1983), this court addressed a trial court's refusal to give specific instructions on a good-faith defense in a tax evasion case. In *Rothbart* the defendant was convicted of failure to file timely tax returns. *Id.* at 753. The defendant requested the trial court to instruct the jury that a good-faith "misunderstanding of the law" is a defense. *Id.* at 755. Instead the trial court, like that here, instructed the jury that a failure to file was not willful if "due to accident, inadvertence, negligence, or mistake." *Id.* In affirming we found that this instruction on intent sufficiently presented the defendant's theory to the jury. *Id.*

*Hopkins* did not explicitly overrule the decision in *Rothbart.* It did, however, overrule one of the decisions on which the *Rothbart* court relied for its conclusion that a specific good-faith instruction need not be given. *See Hopkins,* 744 F.2d at 718 (overruling *United States v. Westbo,* 576 F.2d 285 (10th Cir.1978)). Thus the precedential value of *Rothbart* is tenuous, and we believe the *Hopkins* rationale applies to the instant case.

instruction despite absence of explicit good-faith wording).

On the amount of evidence necessary, in *United States v. Swallow*, 511 F.2d 514 (10th Cir.), *cert. denied*, 423 U.S. 845, 96 S.Ct. 82, 46 L.Ed. 266 (1975), we stated that "[e]ven though the evidence may be weak, insufficient, inconsistent or of doubtful credibility, its presence requires an instruction on a theory of defense." *Id.* at 523; *accord United States v. Curry*, 681 F.2d 406, 413 (5th Cir.1982); *United States v. Garner*, 529 F.2d 962, 970 (6th Cir.), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2630, 49 L.Ed.2d 376 (1976). In *Hopkins*, however, we suggested that a defendant is entitled to a good-faith instruction only if there is a quantum of evidence from which the jury *"reasonably"* could find that the defendant acted in good faith. *Hopkins*, 744 F.2d at 718 (emphasis added); *accord United States v. Jackson*, 726 F.2d 1466, 1468 (9th Cir.1984). We need not resolve whether our en banc holding in *Hopkins* was intended to state a stricter rule than that recited in *Swallow*, because the giving of an erroneous instruction does not warrant reversal when, in light of all the evidence, it is clear that the error was harmless. *See, e.g., United States v. Herbert*, 698 F.2d 981, 986 (9th Cir.) (erroneous instruction requires reversal only if there is "reasonable probability that error materially affected verdict") (quoting *United States v. Valle-Valdez*, 554 F.2d 911, 916 (9th Cir.1977)), *cert. denied*, 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983); *see also United States v. Crouthers*, 669 F.2d 635, 640 (10th Cir. 1982).

▮ The only evidence at trial of defendant's good-faith misunderstanding of the law consisted of his own statements. On the other hand, there was unchallenged evidence that defendant paid income taxes on his wages for twenty-seven years, that he was a sophisticated investor, and that he attended tax protester conventions at which he expressly discussed how to fabricate, for the purposes of a trial, evidence that he misunderstood the tax laws. Therefore this is not a case in which a defendant has simply presented minimal evidence supporting his theory as in *Swallow*. Here the evidence at trial demonstrated that defendant acted in bad faith. Thus, even if a good-faith instruction had been given, we are confident the result of the trial would have been the same.

## IV.

Defendant claims that, in addition to instructing the jury inadequately on his good-faith defense, the district court prevented him from presenting this defense by excluding letters he had written regarding his interpretation of the tax laws and Supreme Court opinions on which he had relied to reach his conclusion that wages are not income.

The court allowed defendant to introduce some letters he sent and all letters he received from IRS officials in response to his inquiries, and to testify on the basis for his beliefs. The district court excluded as irrelevant, however, several letters defendant wrote to senators and congressmen regarding the definition of income and the responses he received to these letters. Defendant contends that these letters were highly probative of his state of mind.

▮ We believe that these letters may have been relevant as evidence that defendant misunderstood his tax liability. *See* Fed.R.Evid. 401 (relevant evidence is that which has "*any* tendency to make ... [a] fact ... more probable or less probable") (emphasis added). Their exclusion, however, does not warrant reversal of defendant's conviction. Defendant was permitted to testify at length concerning his beliefs about the tax system and the basis for his beliefs. He detailed how he had been studying tax issues for more than ten years and had studied Supreme Court opinions construing the tax laws. He was allowed to read letters he had written to the IRS and to Senator David Boren. We have no reason to believe that the excluded letters would have differed from or added significantly to the evidence previously introduced. Accordingly, we hold that, despite the exclusion of those letters, defend-

ant was able to submit the substance of his good-faith theory to the jury, and any error was harmless. *See United States v. Thiel,* 619 F.2d 778, 781 (8th Cir.1980) (wrongful exclusion of letters written to IRS not reversible error because defendant had opportunity to articulate his good-faith defense); *United States v. Rothbart,* 723 F.2d 752, 755 (10th Cir.1983); *United States v. Hayes,* 477 F.2d 868, 873–74 (10th Cir.1973).

Defendant's assertion that the trial court wrongly excluded various Supreme Court opinions on which he relied also is unavailing. A trial court's decision to exclude evidence will be overturned only if it was clearly erroneous or an abuse of discretion. *See, e.g., United States v. Rothbart,* 723 F.2d at 755; *United States v. Neal,* 718 F.2d 1505, 1509–10 (10th Cir. 1983), *cert. denied,* — U.S. ——, 105 S.Ct. 87, 83 L.Ed.2d 34 (1984). Several courts have held that Supreme Court opinions or other evidence on which a defendant relied to reach an erroneous conclusion on tax obligations properly are excluded. *See Mueller,* 778 F.2d at 540 (exclusion of Supreme Court opinions); *United States v. Burton,* 737 F.2d 439, 443 (5th Cir.1984) (exclusion of expert testimony concerning plausibility of theory that wages are not income); *United States v. Kraeger,* 711 F.2d at 7–8 (exclusion of federal court opinions); *Cooley v. United States,* 501 F.2d 1249, 1253 (9th Cir.1974) (exclusion of letter appearing in Congressional Record, IRS Training Manual, and Supreme Court opinions), *cert. denied,* 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975). These courts have found, and we agree, that admission of such evidence would confuse the jury with respect to the requirements of the law. It is the role of the court to control such submissions and to instruct the jury on the law itself. *See* Fed.R.Evid. 403.

As noted, we have adopted a subjective standard in tax evasion cases, and thus the basis on which defendant reached his opinions is of little relevance. The proper inquiry is whether defendant actually misunderstood his tax obligations, not whether he had a reasonable basis for his beliefs.

Accordingly, we find the district court's exclusion of Supreme Court opinions appropriate.

V

Defendant's final contention is that the district court erred in denying his motion to inspect and copy jury records pursuant to 28 U.S.C. § 1867(f). The district court refused to allow defendant to inspect the jury records because he apparently had failed to apply for an order to do so. The court, however, did permit defendant to inspect the records following his conviction. On the basis of this subsequent inspection, defendant filed a motion for a mistrial and submitted briefs to the district court. The district court ordered that the motion be held in abeyance pending disposition of this appeal. The government concedes that a limited remand to the district court to determine if the jury panel was selected properly is appropriate. Brief of Appellee at 4. We agree. Therefore the district court is directed to consider defendant's contentions on remand and to set aside his conviction if he establishes that the jury panel was chosen improperly. *See United States v. Lawson,* 670 F.2d 923, 926 (10th Cir. 1982).[11]

AFFIRMED and REMANDED.

---

11. Because the government agrees that remand is proper, we do not reach the question of whether defendant's failure to request an order from the court or otherwise pursue his request diligently constitutes a waiver of his right to inspect jury records. A district court should, as a matter of course, avoid confusion by issuing an order granting a proper § 1867(f) request. *See Government of the Canal Zone v. Davis,* 592 F.2d 887, 889 (5th Cir.1979).