**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Matthias L. HARTING, Defendant–Appellant.**

**No. 86–2549.**

United States Court of Appeals, Tenth Circuit.

July 11, 1989.

Rehearing Denied Aug. 31, 1989.

Glen Dawson, Asst. U.S. Atty. (Dee V. Benson, U.S. Atty., William Ryan, Asst. U.S. Atty., on the brief), Salt Lake City, Utah, for plaintiff-appellee.

Frances Smylie Brown, Asst. Federal Public Defender, (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, Colo., for defendant-appellant.

Before McKAY, SETH and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant-appellant Matthias L. Harting was charged by information with failing to file federal income tax returns for the calendar years 1979 through 1981, in violation of 26 I.R.C. § 7203.[1] Harting was convict-

---

**1.** Section 7203 provides in relevant part:

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or

supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other

ed by a jury on all three misdemeanor counts. Harting challenges the trial court's submission of and failure to submit certain jury instructions, as well as the trial court's manner of instructing the jury. Our jurisdiction to consider this appeal from a judgment of conviction arises under 28 U.S.C. § 1291.

## BACKGROUND

Harting had filed timely federal income tax returns, and had paid all income taxes due, for each year beginning in the late 1950s through the calendar year 1978. For each of those years, Harting also had signed W–4 forms permitting his employers to withhold wages for tax purposes. Around 1979, Harting's compliance with the federal income tax laws began to change. Harting testified that after reading certain tax-related articles and attending classes at an unaccredited "law school," the Freeman University in Las Vegas, Nevada, he concluded that compliance with the federal income tax laws was voluntary, rec. vol. IIIA at 27, that he did not believe he had a taxable income, and that he could not determine "what a tax liability was," *id.* at 40. Based on his study, according to Harting, he did not file income tax returns for the years 1979 through 1981, and during that period, he filed fourteen W–4 forms with employers stating that he was exempt from withholding. Harting stated at trial that he did not consider himself a tax protester, nor did he believe that the federal income tax laws were unconstitutional. *Id.*

Harting testified further that after reading the Supreme Court's decision in *United States v. Sullivan,* 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927), he decided that he was required to file some kind of return. Rec. vol. IIIA at 28. In approximately June 1982, Harting sent to the Internal Revenue Service (IRS) "returns" for 1979–

81, each blank of each Form 1040 inscribed with the words "object, self-incriminating." The IRS subsequently notified Harting by mail that his submissions would not be considered valid returns. The IRS also provided Harting with a blank Form 1040, copies of relevant statutes indicating his duty to file, and information regarding possible prosecution in the event of a failure to comply with that duty. Rec. vol. IIA at 49.

In October 1982, the IRS issued a summons to Harting, requesting that he appear in the IRS offices, bringing with him either completed income tax returns or the documents necessary to generate such returns for the years 1979–81. Rec. vol. IIIA at 76. Harting appeared at the requested time, but the meeting was terminated by the IRS agent when Harting attempted to tape record the meeting.[2] After some correspondence between Harting and the IRS which failed to resolve the situation, the criminal prosecution of Harting for failure to file income taxes ensued in October 1985.

Harting seeks reversal of his conviction on three grounds. First, he claims that the trial court erred by failing to submit to the jury a proposed instruction dealing specifically with Harting's defense that he in good faith misunderstood his duty to file. Second, Harting challenges the trial court's instruction to the jury regarding Harting's assertion of the privilege against self-incrimination in his 1982 submission of tax forms to the IRS. Finally, Harting claims that the trial court committed reversible error by making an extraneous comment favorable to the prosecution during its charge to the jury. We reverse.

## I.

■ To obtain a conviction under 26 U.S.C. § 7203, the government must prove that a defendant was 1) required to file a re-

penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ... or imprisoned not more than 1 year, or both, together with the costs of prosecution.

**2.** The agent testified that he was under instructions to make an independent tape recording whenever proceedings were taped by others, in order to verify the accuracy of recordings. The agent possessed no tape recording equipment at the time of his meeting with Harting. Rec. vol. IIIA at 78.

turn, 2) failed to do so, and 3) that the failure was willful. *United States v. Dawes*, 874 F.2d 746, 748 (10th Cir.1989). Only the issue of willfulness was disputed at trial. Harting requested two jury instructions regarding the willfulness element. The first stated that Harting would be entitled to acquittal should the jury find that he entertained a good-faith belief that he was not required to file income tax returns, and the second instruction defined the subjective standard by which to evaluate the term "good faith." [3] The trial court refused to submit either instruction to the jury. Rec. vol. IIB at 4, 7. Because the trial court subsequently modified an instruction, with Harting's approval, to reflect the subjective nature of intent, we review only the denial of the good-faith instruction.[4] Harting contends that this refusal improperly prejudiced his attempt to present his defense to the jury.

"As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988); *see United States v. Hopkins*, 744 F.2d 716, 718 (10th Cir.1984) (en banc). In addition, we have held that the trial court must instruct separately on the defense of good faith: "[I]nstructions on wilfulness, on aspects of intent, on untruth of representations or fraudulent statements are *not* sufficient for this purpose.[5] There must be a full and clear submission of the good faith defense as such." *Hopkins*, 744 F.2d at 718 (emphasis in original). As noted earlier, Harting's only defense was his asserted good-faith misunderstanding of his duty to file.

We have held that "[a] good faith misunderstanding of the duty to file a return can negate the willfulness element of a failure-to-file charge," and "[t]he misunderstanding need not have a reasonable basis to provide a defense."[6] *United States v.*

---

**3.** Harting submitted the following two instructions on willfulness:

> You are instructed that if you find from all the evidence that the Defendant had a good faith belief that he was not required to file tax returns for the years indicated, that his failure to file is not willful and the Defendant is entitled to an acquittal.
>
> You are instructed that the "good faith" referred to in the previous instruction is a subjective standard. This means that you must view the Defendant's state of mind from his view point [sic]. Defendant's beliefs can be in good faith even if those beliefs were mistaken or unreasonable as viewed by others.

Rec. vol. I, doc. 49.

**4.** The trial court proposed to add the word "subjective" to the instruction dealing with specific intent. Rec. vol. II at 13. Counsel for Harting responded: "I would be satisfied with that, Your Honor. I think that accurately states the law." *Id.* The jury was so instructed. Rec. vol. I, doc. 47A, Instr. No. 24.

We reject the government's contention that Harting similarly waived any objection to the refusal of his good-faith instruction. After the trial court denied the requested instructions, rec. vol. IIB at 4, counsel for Harting clearly expressed his dissatisfaction with the ruling and stated the reasons underlying Harting's entitlement to the good-faith instruction, *id.* at 5–6. The court again denied the request, *see infra* note 7, after which the following colloquy occurred:

> Counsel: I understand that, Your Honor, and I think because if the Court does give the instruction referred to about mistake, negligence, referring to the willfulness part of it—
> Court: I'm going to give that instruction.
> Counsel: That will be sufficient for our purposes.

*Id.* at 7. As this could be read as approving only of the willfulness instruction itself, and as it followed two denials of the instruction by the trial court, before and after counsel's objection and argument in support of the instruction, defendant cannot be said to have waived the objection.

**5.** As we noted in *United States v. Harrold*, 796 F.2d 1275 (10th Cir.1986), *cert. denied*, 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987), this requirement in *Hopkins* of a separate good-faith instruction casts doubt on our decision in *United States v. Rothbart*, 723 F.2d 752 (10th Cir. 1983). There, we concluded that the defendant's tendered instruction on his good-faith misunderstanding of the law was adequately encompassed by a general instruction on willfulness. *Rothbart*, 723 F.2d at 755; *see also United States v. Jenkins*, 701 F.2d 850, 858–59 (10th Cir.1983) (drug conviction upheld as general instruction on specific intent considered sufficient to represent defendant's requested instruction that as an F.B.I. informant, he could not possess the requisite criminal intent).

**6.** We acknowledge this apparent conflict: *Mathews* and *Hopkins* state that a defense instruction

*Hairston*, 819 F.2d 971, 972 (10th Cir.1987). Nevertheless, the trial court refused Harting's tendered instructions to that effect, apparently confusing Harting's valid defense of good-faith misunderstanding of his duty to file with the invalid assertion of a good motive behind a failure to fulfill an understood duty.[7] *See Hairston*, 819 F.2d at 973 (neither disagreement with the tax laws or belief that they are unconstitutional, even if held in good faith, provides defense).[8] Given the refusal of a good-faith instruction supported by the law, we must reverse if the evidence is sufficient such that a reasonable jury could believe Harting's asserted defense that he misunderstood in good faith the tax laws and his duty to file an income tax return.

We hold that the evidence in this case is sufficient to allow a reasonable jury to conclude that Harting acted in good faith. The evidence at trial consisted basically of Harting's testimony that he did not believe he had a duty to file, that he was not a tax protester, and did not believe the tax laws to be unconstitutional; poised against the government's proof that he had filed tax returns for approximately the twenty previous years and that he did not file for the years in question despite earning sufficient gross income to trigger the duty to file. When a defendant posits the good faith defense in a willful failure to file prosecution, "[t]he critical inquiry for the jury [is] whether [the defendant] subjectively believed that he did not need to file under the law's requirements," and we have acknowledged the probative value of the defendant's testimony regarding that belief. *Hairston*, 819 F.2d at 973. Although both prongs of the government's proof provided evidence of willfulness, *United States v. Bohrer*, 807 F.2d 159, 161–62 (10th Cir. 1986), such would not, as a matter of law, prevent a reasonable jury from believing Harting's testimony.

The instant situation is distinguishable from that found in *United States v. Harrold*, 796 F.2d 1275 (10th Cir.1986), *cert. denied*, 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987). In *Harrold*, the defendant challenged the trial court's denial of

should be given when there exists evidence sufficient for a *reasonable* jury to find in the defendant's favor, while we have said in *Hairston* that a tax defendant's alleged misunderstanding of the law *"need not have a reasonable basis* to provide a defense." *Hairston*, 819 F.2d at 972. To clarify the interaction of the reasonable jury standard with the subjective intent standard, we note that a reasonable jury may conclude that a defendant actually entertained a quite illogical, but nevertheless non-criminal, state of mind. However, while the asserted defense need not be logical or rational, the defendant must still put on sufficient evidence for a reasonable jury to conclude that the defendant truly held his illogical or irrational, but non-criminal, intent.

**7.** The trial court stated:

Now if it's your defense that [this] thing was not done willfully, that's to be distinguished from good faith in what is Government's instruction number ten having to do with, it's not an acceptable legal defense or justification, that person was motivated to break the law for what he believed to be a good cause. I'm going to give that instruction, and it is no defense that one had good faith in terms of a clear conscience, that is not a defense; whereas it is a defense if the act was not done willfully. Now that's to be distinguished, I understand that, and that's why I will not give your instruction one and two, but I do see the basis for a jury question

on willfulness, and that's the burden of the Government to prove it, and the way they have defined it, I think [it] embraces the kind of matters that I understand this defendant to want to address the jury about.
Rec. vol. IIB at 6–7.

**8.** The trial court did instruct the jury regarding the invalid theory of defense:

Intent and motive should never be confused. Motive is what prompts a person to act, or fail to act. Intent refers only to the state of mind with which the act is done or omitted.

Personal advancement and financial gain are two well-recognized motives for much of human conduct. These laudable motives may prompt one person to voluntary acts of good, another to voluntary acts of crime.

Good motive alone is never a defense where the act done or omitted is a crime. So, the motive of the accused is immaterial except insofar as evidence of motive may aid determination of state of mind or intent.
Rec. vol. I, doc. 47A, Instr. No. 26. The trial court also instructed that "[n]either a defendant's disagreement with the law, nor his own belief that such law is unconstitutional—no matter how earnestly held—constitute[s] a defense of good faith misunderstanding or mistake. It is the duty of all citizens to obey the law whether they agree with it or not." *Id.,* Instr. No. 28.

his request to instruct the jury that a good-faith belief that he had paid all taxes owed would entitle him to acquittal on the charge of income tax evasion. While noting the *Hopkins* standard for evaluating the necessity of so instructing the jury, we did not apply it, but instead affirmed the trial court's denial as constituting harmless error:

> The only evidence at trial of defendant's good-faith misunderstanding of the law consisted of his own statements. On the other hand, there was unchallenged evidence that defendant paid income taxes on his wages for twenty-seven years, that he was a sophisticated investor, and that he attended tax protester conventions at which he expressly discussed how to fabricate, for the purposes of a trial, evidence that he misunderstood the tax laws. Therefore this is not a case in which a defendant has simply presented minimal evidence supporting his theory.... Here the evidence at trial demonstrated that defendant acted in bad faith. Thus, even if a good-faith instruction had been given, we are confident the result of the trial would have been the same.

*Id.* at 1275.

Similar to the facts of *Harrold*, the evidence here of Harting's good-faith misunderstanding consisted basically of his own testimony, and he admitted that he had filed tax returns for approximately the twenty previous years. The government introduced no evidence, however, that Harting disagreed with the tax laws or believed them to be unconstitutional, nor did the government put on evidence that Harting's studies at Freeman University consisted of instruction on tax protest or the contrivance of a good-faith defense. This is in stark contrast to the situation in *Harrold* where uncontradicted evidence showed that the defendant discussed, at tax protester conventions, how to fabricate evidence underlying the good-faith defense itself. Given these discussions, although we cast the result in *Harrold* in terms of harmless error, our conclusion could be read, consistent with *Hopkins*, as essentially involving evidence from which a jury

could not *reasonably* find that the defendant acted in good faith. The facts of this case are not so one-sided as in *Harrold*.

The government argues that the decision of the Supreme Court in *United States v. Pomponio*, 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976), contradicts the requirement we articulated in *Hopkins* that a general instruction on willfulness is not sufficient when the evidence supports the giving of a good-faith instruction. *See Hopkins*, 744 F.2d at 718. The government relies on the statement of the Supreme Court that "[t]he trial judge in the instant case adequately instructed the jury on willfulness. An additional instruction on good faith was unnecessary." *Pomponio*, 429 U.S. at 13, 97 S.Ct. at 24. While we recognize the tension between this language in *Pomponio* and our requirement of a separate good-faith instruction in *Hopkins*, a close reading of *Pomponio* reveals ambiguity, and we find *Hopkins* to be consistent with the substance, if not the language, of *Pomponio*.

In *United States v. Pomponio*, 528 F.2d 247 (4th Cir.1975), the Fourth Circuit reversed convictions for willfully filing false tax returns, disapproving of the following instruction: "Good motive alone is never a defense where the act done or omitted is a crime. So the motive of the accused is immaterial except insofar as evidence of motive may aid determination of state of mind or intent." *Id.* at 249. The court of appeals held that excluding good motive from the jury's consideration was inconsistent with the decision in *United States v. Bishop*, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973), which, in the context of tax felonies and misdemeanors, characterized the term "willfully" as involving "bad purpose and evil motive." *Pomponio*, 528 F.2d at 249 (quoting *Bishop*, 412 U.S. at 361, 93 S.Ct. at 2017). The court of appeals also held that the evidence entitled the defendants to a jury instruction regarding their asserted good-faith belief that certain payments were loans and not income. *Id.* at 250.

The Supreme Court reversed, indicating that the Fourth Circuit had read too much

into *Bishop*'s reference to bad faith and evil intent. According to the Court, that reference simply constituted an alternative formulation of willfulness, but did not impose any additional requirement of proof beyond the basic definition of willfulness as "a voluntary, intentional violation of a known legal duty," *Pomponio*, 429 U.S. at 12, 97 S.Ct. at 23, as the trial court had instructed. The Court then stated: "The trial judge in the instant case adequately instructed the jury on willfulness. An additional instruction on good faith was unnecessary." *Id.* at 13, 97 S.Ct. at 24.

The Court proceeded, however, to review the Fourth Circuit's "alternative ground for ordering a new trial," *id.*, which was in fact the ground dealing with the good-faith instructions. Rather than actually concluding that such instructions were unnecessary, the Court determined that "such instructions were given and that they were adequate." *Id.* These instructions essentially presented a good-faith defense, referring specifically to the defendant's knowledge and essentially addressing, separately from the willfulness instruction, the defendants' entitlement to acquittal should the jury find that the defendants in fact believed the payments in question to be loans.[9] Therefore, we find the separate good-faith instruction requirement in *Hopkins* to be consistent with the Supreme Court's holding in *Pomponio*. Accordingly, as we have concluded that a reasonable jury could have accepted Harting's good-faith defense, the failure to instruct the jury regarding good faith constitutes error under *Mathews* and *Hopkins*, and we must reverse the judgment of the trial court.

## II.

Harting's next claim centers on the trial court's instruction to the jury regarding Harting's inscription of the words "object, self-incrimination" on the Forms 1040 that he submitted to the IRS in 1982. The trial court instructed the jury as follows:

The Fifth Amendment to the United States Constitution provides in part that no person may be compelled in a criminal case to be a witness against himself. However, the Fifth Amendment privilege against self-incrimination does not allow an individual to refuse to provide any information on a tax return.

Although the Fifth Amendment privilege against self-incrimination may be employed to protect a taxpayer from revealing an illegal source of income, it does not protect one from disclosing the amount of his income.

Rec. vol. I, doc. 47A, Instr. No. 30.

Harting does not dispute that the instruction given by the trial court properly stated the law on the privilege of self-incrimination as it relates to the failure to disclose the amount of income on a tax return. *See United States v. Brown*, 600 F.2d 248, 252 (10th Cir.1979) (self-incrimination privilege may be used to protect taxpayer from disclosing illegal source of income, not amount of income), *cert. denied*, 444 U.S. 917, 100 S.Ct. 233, 62 L.Ed.2d 172 (1979). Harting argues instead that the law embodied in the challenged instruction is not applicable to his situation, because his failure to file was not based upon an assertion of a fifth amendment privilege. Rather, Harting's defense relied on his claim that the failure to file was based on his good-faith misunderstanding of his duty to file; a misunderstanding that he claims was rectified upon his reading of *United States v. Sullivan*, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927). According to Harting, disclosure of income amounts on the forms he filed subsequently in 1982 could have been used to incriminate him in a prosecution for failure to file for the three previous tax years.[10] Harting as-

---

9. The jury was instructed that

"if you do find that they were not bona fide loans then you must next determine whether or not the defendants knew at the time they were withdrawing this money that it was not a loan.... In other words, you should deter-

mine whether they knew that, and as I have told you, that is an essential element." *Pomponio*, 429 U.S. at 13 n. 4, 97 S.Ct. at 24 n. 4.

10. The government conceded at trial that the offense of willful failure to file is committed, if at all, as of April 15 of the year in which filing is required. Rec. vol. IIB at 15.

serts that this scenario is distinguishable from a mere refusal to file, or refusal to provide income amounts, based on an assertion of the fifth amendment. Harting argues that the giving of the fifth amendment instruction was erroneous in such a situation, and that it further undermined his attempt to portray the 1982 filings as tending to show his lack of willfulness at the time of the alleged failures to file.

Contrary to Harting's assertion, the instruction properly states the law, even given the factual distinction posited by Harting. In *United States v. Brown*, 600 F.2d 248 (10th Cir.1979), *cert. denied*, 444 U.S. 917, 100 S.Ct. 233, 62 L.Ed.2d 172 (1979), the defendant argued in part that his assertion of the privilege against self-incrimination was justified because otherwise he might incriminate himself with respect to his commitment, evidenced by past failures to file, to act in a way at odds with the income tax law. We rejected this claim based on the Supreme Court's statement in *Garner v. United States*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976), that " 'the claims of privilege we consider here are only those justified by a fear of self-incrimination *other than under the tax laws.*' " *Brown*, 600 F.2d at 252 (emphasis in original) (quoting *Garner*, 424 U.S. at 651 n. 3, 96 S.Ct. at 1180 n. 3).

Further, we conclude that it was precisely Harting's attempt to use those filings to demonstrate his lack of willfulness that rendered the fifth amendment instruction permissible. The trial court instructed the jury, at Harting's request, that

> [y]ou may consider the efforts of the defendant to file a return and his efforts to correspond and meet with Internal Revenue Service agents subsequent to the filing of the return in 1982 as they may reflect on the defendant's intent and state of mind in the years 1979, 1980 and 1981, which goes to the element of willfulness.

Rec. vol. I, doc. 47A, Instr. No. 25; *see Hairston*, 819 F.2d at 974 (acts subsequent to filing deadline may be introduced to prove circumstantially a lack of willfulness). Given Harting's attempt to cast the 1982 filings as bearing upon his lack of willfulness, the government was entitled to an instruction describing the legal effect of the use of the privilege against self-incrimination in those filings. Harting was still free to argue, and he did in fact argue emphatically, that the use of the fifth amendment in the 1982 filings was not the basis of his defense. We find no error in this context.

### III.

Lastly, Harting claims that he was prejudiced by the trial court's extraneous comment during its charge to the jury. Instruction No. 27 stated in part that "[t]he element of knowledge may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him." Rec. vol. I, doc. 47A. In his oral charge to the jury, the trial court added the additional language and spelling "knew, k-n-e-w" after the word "knowledge." Rec. vol. II at 34. Our reading of the transcripts of the closing arguments reveals a similar reference by both the prosecution, rec. vol. IIIB at 3, and by defense counsel, rec. vol. IIIA at 88. Harting's final contention is without merit.

The judgment of the trial court is REVERSED, and the cause is REMANDED for a new trial consistent with this opinion.