**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Walter P. MANN III,
Defendant–Appellant.**

**No. 86–2585.**

United States Court of Appeals,
Tenth Circuit.

Aug. 29, 1989.

Rehearing Denied Oct. 17, 1989.

Glen R. Dawson, Asst. U.S. Atty. (Dee V. Benson, U.S. Atty., with him on the brief), Salt Lake City, Utah, for plaintiff-appellee.

Frances Smylie Brown, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, Colo., for defendant-appellant.

Before McKAY, SETH and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant-appellant Walter P. Mann III, appearing *pro se* and assisted by appointed standby counsel, was convicted by a jury on four mail fraud counts in violation of 18 U.S.C. § 1341, one count of wire fraud under 18 U.S.C. § 1343, and three counts of willful failure to file income tax returns in violation of 26 I.R.C. § 7203. Mann challenges these convictions on the grounds that 1) the evidence was insufficient to support the convictions, 2) the trial court erred by failing to instruct the jury regarding Mann's good-faith defense to the willful failure to file charge, 3) the trial court

admitted unduly prejudicial exhibits, 4) the trial court refused to admit exhibits supporting Mann's legal position, 5) the trial court erroneously admitted the testimony of a summary witness for the government, 6) the prosecution of Mann was impermissibly selective, and 7) government misconduct prevented Mann from receiving a fair trial. Pursuant to our review of the final judgment of conviction under 28 U.S.C. § 1291, we affirm in part and reverse in part.

### Background

Walter Mann had filed income tax returns for the years 1965–1973, and 1975. According to Mann, however, he had engaged in research over this time period which led him to believe that he was not required to file income tax returns. His many theories include the asserted beliefs that 1) the United States Supreme Court has declared that the sixteenth amendment applies only to corporations, 2) the Internal Revenue Service (IRS) has no jurisdiction over him, 3) he is not a "person" within the meaning of 26 I.R.C. § 7203, 4) wages are not income, 5) federal reserve notes are not legal tender, and 6) the income tax is voluntary. Mann testified extensively regarding the legal sources, including United States Supreme Court opinions, upon which he relied in formulating his asserted views. Mann was prosecuted in the instant case for his failure to file returns in the years 1979–81.

In addition to his personal use, Mann compiled the fruits of his tax research for use by others. To this end, Mann placed a classified advertisement in the *Spotlight*, a magazine with worldwide subscription, published in West Virginia. Rec. supp. vol. IV at 175. The ad read as follows:

> I.R.S. QUIT FILING? Want to quit? Relax! USSCt declares 16th Amdt. applies only to Corporations. How to Plead it! Basics $20 M.O. only + SASE to: W.M. Box 715, St. George, Utah 84770.

Testimony revealed that a number of individuals responded to this ad and received the "basics" package; one testified that he received nothing. Mail deliveries of the *Spotlight* containing this ad formed the basis for the mail fraud counts.

In January 1982, Mann purchased a radio spot on station KDXU, which broadcasts its signal from the site of Dick's Cafe in St. George, Utah. The radio spot contained statements to the effect that the power of the IRS over individuals derived from fear and intimidation rather than any law.[1] The spot did not advertise Mann's package of legal materials, did not solicit any funds, and did not refer to the *Spotlight* advertisement. This radio spot gave rise to the wire fraud count of the indictment.

### I.

Mann challenges the sufficiency of the evidence with regard to his convictions on all counts. In evaluating each of these

---

**1.** The tape-recording admitted at trial, rec. supp. vol. IV at 89, consisted in its entirety of the following:

Voice 1: And we welcome you back again Thursday for another interesting topic on the program, Opinion Please.

Voice 2: This is KDXU, broadcasting from the site of Dick's Cafe.

Mann: The only power that the IRS has over an individual is that which one gives the IRS and that which the IRS derives from the gun and through fear. Just as Satan has only that power over us as we give him, Satan's little helpers have only that power which we give them. In my opinion there is no law, and never has been, which requires an individual American freeman to file a return or pay an income tax. The IRS and state gets its [sic] powers through terror and fear and not by the law when it comes to taxes. When a majority of a community becomes enslaved by terror, fear and ignorance, a community is helpless to protect the few remaining patriots who resist such tyranny. Self-imposed slavery which governs the minds of Utahans and its bureaucrats is the only danger to the Constitution. Those who are waiting for an order from their commanders to save the Constitution will wait 'til hell freezes over, for that order will never come. The order was given long ago but ye would not hear it. Ye cannot be saved in ignorance. Know the law and the law will make you free. The Constitution will be saved by no one until the ignorance with which we are bound is overcome. Your continued burying of your head in the sand will [sic] and is your temporal and spiritual enslavement. The Constitution hangs but by a thread. Rise up now and save it or all is lost.

Voice 4: This announcement is paid for by Walter P. Mann, III.

claims, we consider both the direct and the circumstantial evidence, and the reasonable inferences that can be drawn therefrom, in the light most favorable to the prosecution. *United States v. Taylor,* 832 F.2d 1187, 1192 (10th Cir.1987). With regard to the mail fraud charge, the government is required to prove two elements: a scheme to defraud, and the use of the mails for the purpose of furthering the scheme. *Id.* Mann argues that the government failed to prove the existence of a scheme to defraud.

A scheme or artifice to defraud "connotes a plan or pattern of conduct which is intended to or is reasonably calculated to deceive persons of ordinary prudence and comprehension." *United States v. Washita Constr. Co.,* 789 F.2d 809, 817 (10th Cir.1986). Often, however, fraudulent intent is not susceptible of proof by direct evidence. *Taylor,* 832 F.2d at 1192. " 'In numerous cases it must be inferred from a series of acts and pertinent circumstances. One will not be heard to say that he did not intend the natural consequences of his conduct.' " *United States v. Themy,* 624 F.2d 963, 965 (10th Cir.1980) (quoting *Crosby v. United States,* 183 F.2d 373, 375 (10th Cir.), *cert. denied,* 340 U.S. 906, 71 S.Ct. 274, 95 L.Ed. 656 (1950)). Further, "whether a mail fraud defendant had the requisite criminal intent is, of course, a question for the jury." *Themy,* 624 F.2d at 965.

■ The government's expert on tax law, Mr. Chancellor, testified that the representation in the *Spotlight* ad—that the Supreme Court has declared that the sixteenth amendment applies only to corporations—is untrue. Supp. rec. vol. VI at 396. We agree and add that each of the views offered by Mann, whether found in his published materials or articulated additionally at trial, falls somewhere on a continuum between untrue and absurd. Nevertheless, " '[o]ne cannot be held to guilty knowledge of falsity of his statements simply because a reasonable man under the same or similar circumstances would have known of the falsity of such statements.' " *Themy,* 624 F.2d at 965 (quoting *Elbel v. United States,* 364 F.2d 127, 134 (10th Cir.

1966), *cert. denied,* 385 U.S. 1014, 87 S.Ct. 726, 17 L.Ed.2d 550 (1967)).

■ Substantial evidence exists, however, from which the jury may reasonably have concluded that Mann made false representations with the requisite criminal intent, such intent being the "knowledge of the fact, or indifference to the possibility," that the representations were false. *Themy,* 624 F.2d at 967–68. Mann's previous filing of tax returns constituted evidence that despite his suggestion in the *Spotlight* ad, he knew that he and those similarly situated were under a duty to file. *See United States v. Bohrer,* 807 F.2d 159, 161 (10th Cir.1986). Mann testified that all of his beliefs, including the representation that only corporations are required to pay income tax, were based on his view of the jurisdiction of the courts and the IRS. Rec. supp. vol. VIII at 788, 790, 792. While Mann's advertisement offered his material to the general public, and while he testified that his theory of jurisdiction was capable of general use, *id.* at 799, Mann admitted on cross examination that he had testified in a previous trial that his jurisdiction theory was applicable only to him, not to others. *Id.* at 801.

Mann testified further that he believed jurisdiction to be dependent upon proof of U.S. citizenship, rec. supp. vol. VII at 567, and that he was not such a citizen, but was rather a "free inhabitant of this charter of Massachusetts and Connecticut," *id.* Mann persisted in his argument that he was not a citizen of the United States on cross examination, despite his admission that he was born in Nebraska and that he had characterized himself as a U.S. citizen on a personal history form during his service in the Air Force. Rec. supp. vol. VIII at 767–69.

IRS agent James Simonelli testified that after responding to the *Spotlight* ad, he received, among other things, a paper containing tax advice, with citation to case authority. Rec. supp. vol. IV at 53–55. The caption at the head of this document, admitted into evidence, read: "American Independent Bar Association. W.P.M. III, Box 715, St. George, Utah 84770. Law

Review, 18 August 1980, Title 5 U.S.Code Governs U.S. Tax Procedure." *Id.* at 53. Although not stated explicitly, this caption permits an inference by the jury that Mann falsely represented himself as authorized to practice law, as "[a] good advertisement delivers its message by suggestion as clearly as by literal statement." *Themy*, 624 F.2d at 967. Given substantial evidence suggesting that Mann made misrepresentations either knowing them to be false, or with a reckless indifference as to their truth or falsity, we hold that the evidence was sufficient to support the jury's finding of guilt on the mail fraud counts.

■ Mann also claims that the evidence was insufficient to support his conviction on the wire fraud count. To support a wire fraud conviction, the government must prove that an interstate transmission by means of wire be "for the *purpose* of executing" a scheme or artifice to defraud. 18 U.S.C. § 1343 (emphasis added); *see United States v. Puckett*, 692 F.2d 663, 669 (10th Cir.), *cert. denied*, 459 U.S. 1091, 103 S.Ct. 579, 74 L.Ed.2d 939 (1982). Mann argues that, even assuming a scheme to defraud, the radio spot was not in furtherance thereof; the government argues that the transmission of Mann's spot during the time of the *Spotlight* scheme, and containing similar misrepresentations to those contained in Mann's published materials, is sufficient to support the jury's finding of guilt. Construing the evidence in the light most favorable to the government, we must reverse.

We have said that a wire transmission may be considered to be for the purpose of furthering a scheme to defraud "so long as the transmission is incident to the accomplishment of an essential part of a scheme." *Puckett*, 692 F.2d at 669. Clearly, there is no evidence, either direct or circumstantial, that demonstrates any scheme to defraud on the face of the radio spot. Neither is there a sufficient connection between the radio spot and the scheme underlying Mann's mail fraud convictions, which we have held are amply supported by the evidence. Although the government argues that the spot tended to lend credibility to the *Spotlight* ad, the radio spot makes no reference to the *Spotlight* solicitation or any of the materials advertised in that ad, which is only identified by the initials "W.M." and a St. George address. While we recognize that fraudulent intent is often proved with circumstantial evidence, these circumstances are too attenuated to properly allow a jury to find that the radio spot, cast explicitly as Mann's opinion, *see supra* note 1, was "incident to the accomplishment of an essential part of the scheme." *Puckett*, 692 F.2d at 669. The radio spot therefore falls outside the proscription of the wire fraud statute, and we reverse the judgment of conviction on that count.

## II.

■ There is sufficient evidence to support Mann's conviction on the willful failure to file counts. The government presented evidence that Mann had previously filed returns, and that he had received correspondence from the IRS informing him of this duty prior to the years in question, 1979–81. Despite the sufficiency of the evidence, however, Mann argues that he was prejudiced by the trial court's failure to instruct the jury regarding Mann's good-faith defense to the willful failure to file charges. We agree. We have held that a defendant's good-faith belief that he is not required to file a return is a valid defense in this context, and the beliefs need not be reasonable if actually held in good faith. *United States v. Harting*, 879 F.2d 765, 767 (10th Cir.1989); *United States v. Hairston*, 819 F.2d 971, 972 (10th Cir.1987).

Mann testified at length regarding the beliefs underlying his decision not to file, citing a wide range of legal authority, including United States Supreme Court opinions, in support of his position. Although Mann's varied arguments are difficult to distill into a unified theme, the most basic thrust of his asserted beliefs seems to be that the law as articulated in various court opinions supports the application of the income tax only to corporations, and that the

enforcement of the individual income tax is carried out only by threats and coercion from "Satan's little helpers," *see supra* note 1, the IRS.[2] We must remind ourselves here that the good-faith defense need not be rational, if there is sufficient evidence from which a reasonable jury could conclude that even irrational beliefs were truly held.[3] *Harting,* at 768 & n. 6; *see Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988) (standard for judging quantum of evidence needed to support the giving of an instruction). Mann's testimony in this case provided sufficient evidence, *see Harting,* at 768, and the general instruction on willfulness given here is not adequate in this circuit to present the defense of good faith, *see id.* at 767; *United States v. Hopkins,* 744 F.2d 716, 718 (10th Cir.1984) (en banc). Therefore, we reverse the judgments of conviction for willful failure to file income tax returns and remand to the district court for a new trial on those counts.

### III.

■ Mann next argues that the trial court erred by allowing the introduction into evidence of prejudicial exhibits. Specifically, Mann contests the admission of the *Spotlight* magazines in their entirety. According to Mann, the magazines contained irrelevant and inflammatory matter, with any probative value outweighed by potential prejudice. We note initially that the trial court is granted broad discretion in ruling on the relevance of evidence and in determining whether that relevance is outweighed by potential prejudice. *United States v. Neal,* 718 F.2d 1505, 1509–10 (10th Cir.1983), *cert. denied,* 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed.2d 34 (1984); *see* Fed.R.Evid. 403. We review for an abuse of that discretion.

The magazines were clearly relevant to the mail fraud prosecution as they contained the advertisements that formed the basis of the charge and represented the items actually sent by the U.S. mails. With regard to Mann's claim that the magazines contained irrelevant, inflammatory matter rendering the admission of the entire publication more prejudicial than probative, it does not appear that a proper objection was made at the time of the offer of the evidence, and we thus review for plain error. Fed.R.Crim.P. 52(b). Mann objected to the admission of the exhibits stating that "[t]he introduction of this evidence really has no purposes relating to the case as I can see it." Rec. supp. vol. IV at 68. The objection did not distinguish between relevant and allegedly irrelevant matter, but stated that the evidence being offered, the *Spotlight* magazines, contained "no" relevant material. This relevancy objection was properly rejected, as noted above.

When the district court allowed counsel for the government to display the magazines to the jury, Mann, apparently at the suggestion of standby counsel, made an objection to the lack of "a proper foundation" and requested a bench conference. *Id.* at 72. While Mann did not elaborate further, standby counsel later reaffirmed that the substance of the objection was foundational, stating in a chambers conference that

"it is a rather inflammatory cheap paper that Mr. Mann is not responsible for. And they are going to introduce it and hand it to the jury when there has been no testimony given at this point identifying the W.M. whose initials are on that paper tying it to the defendant."

*Id.* at 83–84. After the trial court denied the objection, Mann again argued that "there is no identification on it." *Id.* The

---

2. It is no defense in the willful failure to file context that a defendant disagrees with the income tax laws or believes them to be unconstitutional. *Hairston,* 819 F.2d at 971. While some of Mann's beliefs appear to be constitutional challenges to the income tax as applied to him, some of his contentions are not.

3. Of course, although not itself the standard by which to evaluate good faith, the reasonableness of a good-faith defense is a factor which the jury may properly consider in determining whether a defendant's asserted beliefs are genuinely held. *See United States v. Payne,* 800 F.2d 227, 229 (10th Cir.1986).

foundational objection was denied, and Mann does not appeal that ruling.

"Under the Federal Rules of Evidence, an objection to a ruling admitting evidence is proper when 'a timely objection or motion to strike appears of record, *stating the specific ground of objection,* if the specific ground was not apparent from the context.'" *United States v. Taylor,* 800 F.2d 1012, 1017 (10th Cir.1986) (emphasis in original) (quoting Fed.R.Evid. 103(a)(1)), *cert. denied,* 484 U.S. 838, 108 S.Ct. 123, 98 L.Ed.2d 81 (1987). The record shows that neither Mann nor his standby counsel stated or fairly implied as a specific ground for objection the fear that the probative value of the exhibits was outweighed by potential prejudice, nor was such apparent from the context. While Mann contends that the trial court could have employed a number of means to limit the jury's exposure to irrelevant and inflammatory matter, the trial court was simply not so requested. And this situation clearly demonstrates how an appropriate contemporaneous objection would likely have served its purpose and avoided this appellate controversy, as several times during the course of the trial, the district court did honor the parties' requests to redact irrelevant or inflammatory matter from otherwise relevant exhibits, or to review *in camera* exhibits objected to as prejudicial. *See* rec. supp. vols. IV at 76, 181–82; VIII at 687, 773–74; IX at 808. Having reviewed the magazines displayed to the jury and considering the record as a whole, we do not find any error that "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (articulating plain error standard) (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).

### IV.

■ Mann argues that the trial court erred by refusing to accept cases, writings and other exhibits into evidence showing Mann's good-faith belief in his legal position. This argument is without merit. Because a good-faith defense turns on the defendant's subjective belief, Mann's testimony regarding his views was more probative than publications representing the source or articulation of those beliefs. *Hairston,* 819 F.2d at 973; *United States v. Harrold,* 796 F.2d 1275, 1285 (10th Cir. 1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987). Further, it is the district court's peculiar province to instruct the jury on the law, and "admission of such evidence would confuse the jury with respect to the requirements of the law." *Harrold,* 796 F.2d at 1285.

Mann states that "his planned defense was extremely circumscribed by the trial court." Appellant's Brief at 19. We cannot accept this characterization. "The court did not prevent [Mann] from mounting a defense, as the appellate brief suggests, but rather exercised its discretion regarding the form in which such evidence should be admitted so as to minimize jury confusion." *Hairston,* 819 F.2d at 973. Moreover, a reading of the record reveals that the trial court displayed exemplary patience and evenhandedness during Mann's often redundant testimony over the course of two days. Mann was permitted to testify at length regarding his views of the law, referring specifically to the authority he relied upon, and the trial court's management of Mann's presentation was well within its discretion. *Id.; Harrold,* 796 F.2d at 1285.

### V.

■ Mann next argues that the trial court erred by allowing the testimony of government witness Max Springer. Springer, the government's final witness, testified as an expert in the field of income tax calculation and accounting. Rec. supp. vol. VI at 451. His testimony consisted of a summary of previously admitted evidence, compiled for the purpose of determining Mann's taxable income for the years 1979–81. Mann claims that the evidence in this case was not complex enough to warrant the use of a summary witness and that the trial court failed to adequately caution the jury regarding the nature of

summary testimony. The first contention is without merit, as "[w]e have approved the use of summaries in tax prosecutions on other occasions," including summary testimony similar to that in the instant case. *United States v. Harenberg,* 732 F.2d 1507, 1513 (10th Cir.1984) (involving summary testimony of IRS agent applying previously admitted evidence to different valid methods of preparing return). Further, the testimony itself and instructions to the jury convince us that no error was committed.

We have said that "[summaries] may properly be put before a jury with limiting instructions." *United States v. Kaatz,* 705 F.2d 1237, 1245 (10th Cir.1983). For that proposition in *Kaatz,* we cited *United States v. Scales,* 594 F.2d 558 (6th Cir.), *cert. denied,* 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979), which required cautionary instructions to counteract the possibility that "[t]he jury might rely upon the alleged facts in the summary as if these facts had already been proved, or as a substitute for assessing the credibility of witnesses." *Id.* at 564. Springer acknowledged at the outset of his testimony that it was based on evidence already admitted by the district court, rec. supp. vol. VI at 452, and he reaffirmed this throughout his testimony, *id.* at 453, 460–62, 464. Following Mann's objection that the summary witness was intruding upon the jury's factfinding role, the district court stated before the jury that "with respect to the findings of fact, of course the jury is the finder of fact, Mr. Mann. He [Springer] is qualified as an expert to testify. They may totally disregard his testimony if they wish. That is their province." *Id.* at 456.

In its charge to the jury, the district court gave a similar instruction regarding the testimony of expert witnesses and also instructed the jury that they were the sole judges of the credibility of witnesses. Rec. supp. vol. XIII, Instr. Nos. 20–21. These

instructions and the trial court's comments before the jury were sufficient to address the concerns articulated in *Scales.* And while Mann complains that the trial court failed to instruct the jury regarding the role of a summary witness,[4] Mann "failed to offer any suggestions or admonitions ... at the time the matter arose." *United States v. Riebold,* 557 F.2d 697, 705 (10th Cir.), *cert. denied,* 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977); *cf.* Fed.R. Crim.P. 30.

Finally, Springer was available for cross examination, although Mann chose not to cross examine Springer. Under these circumstances, the trial court did not abuse its discretion in allowing the summary testimony and accompanying charts. *See United States v. Kapnison,* 743 F.2d 1450, 1457–58 (10th Cir.1984), *cert. denied,* 471 U.S. 1015, 105 S.Ct. 2017, 85 L.Ed.2d 299 (1985); *Harenberg,* 732 F.2d at 1513–14; *Carlson v. United States,* 187 F.2d 366, 372 (10th Cir.) (no error when trial court admitted exhibits, without instructions, containing more concise compilation of information already admitted into evidence), *cert. denied,* 341 U.S. 940, 71 S.Ct. 1000, 95 L.Ed. 1367 (1951); *United States v. King,* 616 F.2d 1034, 1041 (8th Cir.) (summary charts proper when they fairly reflect evidence already introduced and witness who prepared charts subject to cross examination), *cert. denied,* 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980), *cited in Harenberg,* 732 F.2d at 1514.

## VI.

▪ Mann also claims that he was impermissibly selected for prosecution based upon his exercise of first amendment rights to speak regarding his views about the tax laws. Fed.R.Crim.P. 12(b) requires that "[d]efenses and objections based on defects in the institution of the prosecution" must be raised prior to trial.[5] Because a selec-

---

4. For instance, we have approved a cautionary instruction to the effect that summaries are not themselves evidence, but are "summaries, the accuracy and reliability of which [are] to be determined by the testimony and exhibits admitted into evidence." *United States v. Kapnison,* 743 F.2d 1450, 1457 (10th Cir.1984), *cert.*

denied, 471 U.S. 1015, 105 S.Ct. 2017, 85 L.Ed.2d 299 (1985).

5. Fed.R.Crim.P. 12(b) states in pertinent part:
   **(b) Pretrial Motions.** Any defense, objection, or request which is capable of determination

tive prosecution claim clearly implicates the institution of the prosecution, it must be raised prior to trial. *United States v. Jarrett,* 705 F.2d 198, 204–05 (7th Cir.1983), *cert. denied,* 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984); *United States v. Taylor,* 562 F.2d 1345, 1356 (2d Cir.), *cert. denied,* 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977); *United States v. Oaks,* 508 F.2d 1403, 1404–05 (9th Cir. 1974), *cert. denied,* 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976). The trial in this case was concluded on September 10, 1986, and Mann filed motions to dismiss based on selective prosecution on September 23 and 30, 1986. *See* rec. vol. II, docs. 71 & 81. Therefore, we do not address this contention.

### VII.

Finally, Mann claims that various instances of government misconduct prevented Mann from receiving a fair trial. After considering Mann's claim, reviewing the transcript, and applying the relevant law, we conclude that the alleged misconduct was either not improper or did not affect the outcome of the trial. *See United States v. Martinez–Nava,* 838 F.2d 411, 416–17 (10th Cir.1988).

### VIII.

Based on the foregoing, we AFFIRM Mann's convictions on the four mail fraud counts. Mann's wire fraud conviction is REVERSED for insufficient evidence, and the trial court shall enter a judgment of acquittal on the wire fraud count. Mann's convictions on the three counts of willfully failing to file tax returns are REVERSED, and we REMAND for a new trial on the willful failure to file counts.

without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:

(1) Defenses and objections based on defects in the institution of the prosecution.