986 F.2d 1431
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Bob O. PARRIS, Defendant-Appellant.
 No. 91-7099.
 United States Court of Appeals, Tenth Circuit.
 Jan. 27, 1993.
 
 Before STEPHEN H. ANDERSON and EBEL, Circuit Judges, and McWILLIAMS, Senior Circuit Judge.
 ORDER AND JUDGMENT*
 McWILLIAMS, Senior Circuit Judge.
 
 
 1
 In this court, counsel for the appellant and the appellee waived oral argument. After examining the briefs and the record, this panel also determined that oral argument would not materially assist the determination of this appeal. The cause was therefore ordered submitted without oral argument. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9.
 
 
 2
 Bob Parris, a public accountant in Sallisaw, Oklahoma, was indicted by a grand jury on April 17, 1991, and charged with two counts of mail fraud and one count of wire fraud. The gist of the charges was that Parris devised a scheme to solicit and obtain funds from various investors by means of false and fraudulent pretenses and to thereafter defraud them of their investment. It was alleged that Parris used the mail and the telephone in furtherance of the scheme.
 
 
 3
 In count 1, Parris was charged with using the United States Postal Service on April 29, 1986, to execute and further his scheme to defraud in violation of 18 U.S.C. § 1341. Specifically, he was charged with delivering to the United States Postal Service in Sallisaw, Oklahoma an envelope containing a check for $32,000, given him by Josephine Milligan for delivery to Merrill Lynch Co. in Fayetteville, Arkansas.
 
 
 4
 In count 2, Parris was charged with furthering his scheme to defraud by engaging in a telephone conversation with Jean Ware on June 20, 1986, between Sallisaw, Oklahoma and Dardanelle, Arkansas in violation of 18 U.S.C. § 1343. Specifically, Parris was charged with telling Jean Ware in that conversation that the funds which she and her husband had given Parris to invest were "covered by insurance and that personnel from the insurance company would be contacting them soon."
 
 
 5
 In count 3, Parris was charged with using the United States Postal Service on May 20, 1986, to execute and further his scheme to defraud in violation of 18 U.S.C. § 1341. Specifically, Parris was charged with delivering to the United States Postal Service in Sallisaw, Oklahoma an envelope containing a check for $800, payable to Jerald Ware, for delivery to Jerald Ware in Dardanelle, Arkansas.
 
 
 6
 A jury convicted Parris on all three counts and he was sentenced to five years' imprisonment on each count, the three sentences to be served consecutively. Parris appeals his convictions, urging two grounds for reversal: (1) the evidence is insufficient to sustain his conviction on any count; and (2) he was denied the effective assistance of trial counsel.
 
 
 7
 Although Parris contends that the government proved only negligent investment, not a scheme to defraud, we believe that the government's evidence showed that Parris devised a scheme that defrauded investors of at least a million dollars. Parris, in his capacity as a public accountant, assisted his clients in the preparation of their tax returns. In 1980, Parris created an entity, the Parris Management Trust, which he presented to many of his clients as an investment opportunity which not only would make money, but also would reduce their tax liability.
 
 
 8
 To induce these persons to invest in this trust, Parris made numerous fraudulent representations and promises. For example, Parris told would-be investors that monies invested in the trust would be invested only in blue-chip stocks, when, in fact, they were invested in high-risk ventures. Parris also guaranteed investors 12% annual return on their investment. During the trust's existence over a period of about six years, Parris advised any investor who inquired that the trust was "doing fine" and "making the 12%." Parris encouraged the investors not to withdraw any money and to invest more, telling them that the trust was performing well and that their money was safe. To maintain the illusion that the trust was performing as promised, from time to time he would send some money to investors as "interest" or "earnings" on their investment. In fact, the monies Parris paid to investors were not "interest" or "earnings," but were actually a small portion of the funds originally invested either by the recipients of the payments or by subsequent investors.[1] He also represented from time to time that such investments were "insured" and were "as safe as the federal government."
 
 
 9
 Parris had accounts with A.G. Edwards & Sons, Inc., in Fort Smith, Arkansas; Merrill Lynch Co., in Fayetteville, Arkansas; and Olde Discount Brokers, in Tempe, Arizona. From time to time, monies given to Parris for investment were forwarded to these brokerage houses. Parris was apparently allowed to draw against these accounts, and he did so for his personal use.
 
 
 10
 Contrary to Parris' representations to the investors, the trust never earned money. The trust records revealed that investors lost well over a million dollars. Further, there was evidence that Parris commingled trust funds with funds from other businesses he owned, lost funds in high risk investments, and diverted funds to his own personal uses. For example, he used trust funds to buy a new Cessna airplane and greyhound racing dogs, to open an automobile dealership, and to pay other personal expenses. By 1982, most of the money that had been invested in 1980 was either lost or spent.
 
 
 11
 In his opening brief, counsel for Parris concedes that if the evidence is viewed in a light most favorable to the government, Parris "might possibly be found guilty of embezzlement, breach of fiduciary duty, co-mingling [sic] of investors' funds, or other state offenses...." In our view, the evidence of such is not just "possible," but overwhelming. However, as counsel correctly states, Parris was on trial not in a state court for state offenses, but in a federal court for mail fraud and wire fraud. As indicated, Parris' initial argument in this court is that there is insufficient evidence to support his conviction on any of these three counts.
 
 
 12
 Count 1 charged Parris with using the United States Postal Service to deliver an envelope containing Josephine Milligan's check for $32,000 to Merrill Lynch offices in Fayetteville, Arkansas. Counsel first argues that the evidence is insufficient to show that Parris used the mail to deliver this particular check to Merrill Lynch in Fayetteville. In thus arguing, counsel relies on Parris' testimony that he "believed," though he was not sure, that the Milligan check was hand-delivered to Merrill Lynch in Fayetteville. However, Gerald Tomlinson, an employee of Merrill Lynch, testified unequivocally that Mrs. Milligan's check for $32,000 was delivered to Merrill Lynch's offices in Fayetteville by the United States Postal Service. Such being the state of the record, the evidence is sufficient to support the jury's finding that Parris used the United States Postal Service to send Mrs. Milligan's check from Sallisaw, Oklahoma to Merrill Lynch in Fayetteville, Arkansas.
 
 
 13
 Parris also argues that there was insufficient evidence to show that his use of either the mail or the telephone was in furtherance of any fraudulent scheme he might have had. In United States v. Mann, 884 F.2d 532, 535 (10th Cir.1989), we said that to prove mail fraud, the government must prove two elements: 1) that the defendant had a scheme to defraud, and 2) that he used the mails for the purpose of furthering the scheme. In that same case, we also said that to support a wire fraud conviction, the government must prove that an interstate transmission by means of wire was "for the purpose of executing" a scheme. 884 F.2d at 536.
 
 
 14
 As concerns count 1, Parris' use of the mail to send Ms. Milligan's check for $32,000 to Merrill Lynch was in furtherance of Parris' overall scheme to defraud his investors, particularly Ms. Milligan. Over the years Ms. Milligan had made numerous investments in the trust and lost approximately $800,000. Her check for $32,000 represented her last investment. As indicated, Parris had instructed Merrill Lynch to invest the trust monies in high risk ventures.[2] Ms. Milligan gave Parris a check for $32,000 to invest in the trust, which check Parris mailed to Merrill Lynch in Fayetteville. The jury could rationally find that the act of mailing Ms. Milligan's check was incident to an essential part of the overall scheme--to continue to obtain new investments to cover old shortfalls, to maintain the ongoing viability of the fraud, and to conceal losses. See Schmuck v. United States, 489 U.S. 705 (1989).
 
 
 15
 As concerns count 3, it is quite clear that on May 20, 1986, Parris sent by United States Postal Service a check for $800 to Jerald Ware in Dardonelle, Arkansas.[3] This $800 check was the last in a series of monthly checks Parris sent the Wares, beginning in September 1983. It was the Wares' understanding that such payments represented partial payment of interest on their investment. The Wares, incidentally, invested a total of $97,400 in Parris' trust, and eventually lost most of it. In our view, the record supports the jury's finding that the May 20 check and the mailing thereof was in furtherance of, and a part of, the overall scheme to defraud. It certainly was intended to lull the Wares into a false sense of security. A mailing that tends to maintain the ongoing viability of a defendant's fraudulent scheme, either directly or indirectly, is for the purpose of furthering the fraudulent scheme. United States v. Cardall, 885 F.2d 656 (10th Cir.1989).
 
 
 16
 As to count 2, Jean Ware testified that after reading a newspaper account of Parris' difficulties, she telephoned Parris at his home in Sallisaw, Oklahoma from her home in Dardonelle, Arkansas to inquire about the status of the trust. She testified that in their telephone conversation, Parris said that he had turned over to his insurance company the Wares' $92,000 loss and that she would be contacted by representatives of the insurance company within a few days. Of course she was never contacted by any insurance company, and the Wares lost at least $92,000. The jury could rationally find that in this telephone conversation, Parris attempted to lull Jean Ware into inaction, possibly to avoid or delay detection of his wrongdoing. Attempts to conceal a scheme to defraud are as much a part of the scheme as the scheme itself. Cf., United States v. Dunning, 929 F.2d 579, 581 (10th Cir.), cert. denied, 112 S.Ct. 224 (1991); United States v. Kelley, 929 F.2d 582, 585 (10th Cir.), cert. denied, 112 S.Ct. 341 (1991).
 
 
 17
 The questions of whether Parris' use of the mail was for the purpose of furthering his scheme to defraud and whether his use of the telephone was for the purpose of executing his scheme to defraud were submitted to the jury under appropriate instructions. We conclude that the evidence is sufficient to support its finding. To hold to the contrary would require us to hold that as a matter of law Parris' dealings with Ms. Milligan and the Wares, and his use of the mail and telephone in connection therewith, were no part of his overall scheme. This we decline to do.
 
 
 18
 Parris' second ground for reversal is that he was denied his constitutional right to the effective assistance of trial counsel. On arraignment, Parris was found to be indigent and qualified for representation by the federal public defender's office. Shortly prior to trial, Parris did indicate to the district court that he was dissatisfied with the services of the public defender and requested the appointment of new counsel. The request was denied. Also, after his conviction, at a hearing on Parris' motion for release on bail pending appeal, Parris again indicated his continuing dissatisfaction with trial counsel. However, so far as we can ascertain from the record before us on appeal, Parris did not formally raise in the district court the issue of ineffective assistance of counsel in the trial of his case. No hearing was held on this phase of the present appeal, and the district court, of course, has never ruled on the question.[4] Such being the state of the record, we decline to review at this time the portion of the trial record before us and from it evaluate the performance of trial counsel.
 
 
 19
 In Beaulieu v. United States, 930 F.2d 805 (10th Cir.1991) we stated that the preferred avenue for challenging the effectiveness of trial counsel in a federal criminal trial is by collateral attack under 28 U.S.C. § 2255. In that case, we spoke as follows:
 
 
 20
 Indeed, "collateral review will frequently be the only means through which an accused can effectuate the right to counsel...." [A]n accused will often not realize that he has a meritorious ineffectiveness claim until he begins collateral review proceedings, particularly if he retained trial counsel on direct appeal." Moreover, ineffectiveness claims frequently require consideration of evidence not contained in the record on direct appeal.
 
 
 21
 As a result, most circuits follow the general rule that "a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court...." This encourages development of a record on the tactical reasons for trial counsel's decisions, the extent of trial counsel's alleged deficiencies, and the asserted prejudicial impact on the outcome of the trial. (citations omitted)
 
 
 22
 930 F.2d at 807.
 
 
 23
 By a supplemental pro se brief, Parris asserts additional grounds for reversal, many of which relate, in one way or another, to the sufficiency of the evidence. In any event, we are not persuaded by this additional argument.
 
 
 24
 Judgment affirmed without prejudice to Parris' right to challenge in the district court the effectiveness of his trial counsel under 28 U.S.C. § 2255.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Thomas Vest, an FBI agent, characterized Parris' operation as a "ponzi-type" scheme
 
 
 [2]
 Gerald Tomlinson, an account representive of Merrill Lynch in Fayetteville, Arkansas, testified that initially Parris instructed him to invest the trust funds in "covered options and preferred stock," and that later Parris countermanded his earlier instruction and authorized investment of trust funds in "options without the stocks"--a high-risk venture. Apparently, over the years Parris had forwarded to Merrill Lynch in Fayetteville, Arkansas numerous trust monies for investment, Ms. Milligan's check apparently being the last transmittal
 
 
 [3]
 At the time of their investments in Parris' "trust," the Wares resided in Sallisaw, Oklahoma. They later moved to Dardonelle, Arkansas
 
 
 [4]
 Apparently, Parris filed a timely motion for new trial, but the record on appeal does not indicate that the ineffective assistance of counsel was raised therein